[No. B135983. Second Dist., Div. Six. Apr. 5, 2000.]

JAMES PETERS, Petitioner, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Jean F. Matulis and Fred Foss for Petitioner.

No appearance for Respondent.

Michael D. Bradbury, District Attorney, and David Lehr, Deputy District Attorney, for Real Party in Interest.

OPINION

**COFFEE, J.**—Here we decide that the state may not recommit for treatment a sexually violent predator upon the basis of a single psychological evaluation. We, therefore, grant a writ of mandate.

*Factual and Procedural Background*

On March 12, 1997, respondent court found that petitioner James Peters met the commitment criteria for a sexually violent predator (SVP) under article 4 of the Sexually Violent Predators Act (SVPA). (Welf. & Inst. Code, § 6600 et seq.)[1] It ordered that Peters be committed for treatment at Atascadero State Hospital.

Although Peters had been treated by the state hospital for a period of two years, the California State Department of Mental Health (DMH) felt that he was still suffering from a mental disorder and posed a danger to the public. The DMH initiated proceedings to extend his commitment. (§ 6604.) Included with the new petition was a single psychological evaluation performed upon Peters by Dr. Dale Arnold, Ph.D.

Upon the request of DMH, a second psychologist, Dr. Charles Jackson, Ph.D., examined Peters. He concluded that Peters did not meet the SVP criteria, and submitted his tentative report to DMH. Before Dr. Jackson could complete his report, the DMH informed him that it no longer wished his services. Nonetheless, Dr. Jackson completed his report. DMH discarded Dr. Jackson's report without informing Peters.

Peters moved respondent court to dismiss the petition. He asserted that the new petition was defective in that the evaluation was made by only a single health evaluator.

This motion was denied by respondent court. It ruled that an extension of an SVP commitment, in contrast to the initial commitment process, required but a single evaluation.

---

[1]Unless otherwise noted, all statutory references are to the Welfare and Institutions Code.

Peters sought writ relief from this court. Because he lacked an adequate remedy at law, we have issued an order to show cause and stayed further proceedings.

## Discussion

Involuntary civil commitment statutes are subject to the most rigorous form of constitutional review. (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1153, fn. 20 [81 Cal.Rptr.2d 492, 969 P.2d 584].) The SVPA is to be narrowly construed to serve the legitimate and compelling state interest of protecting the public from the danger posed by violent sex offenders and of treating persons with uncontrollable mental disorders. (*Ibid.*; cf. *Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 171 [167 Cal.Rptr. 854, 616 P.2d 836]; *People v. Saffell* (1979) 25 Cal.3d 223, 232-233 [157 Cal.Rptr. 897, 599 P.2d 92].)

" 'To determine legislative intent, a court begins with the words of the statute, because they generally provide the most reliable indicator of legislative intent.' [Citation.] If it is clear and unambiguous our inquiry ends. There is no need for judicial construction and a court may not indulge in it. [Citation.] 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' [Citation.]" (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1047 [80 Cal.Rptr.2d 828, 968 P.2d 539].)

The SVPA is straightforward in its tone and intent. Its objective "is to identify individuals who have certain diagnosed mental disorders which make them likely to engage in acts of sexual violence and to confine them for treatment of 'their disorders only as long as the disorders persist and not for any punitive purposes.' (Stats. 1995, ch. 763, § 1.)" (*In re Parker* (1998) 60 Cal.App.4th 1453, 1466 [71 Cal.Rptr.2d 167].)

The enactment requires that the state prove beyond a reasonable doubt that the charged party suffers from a currently diagnosed mental disorder which predisposes him to engage in sexually violent criminal behavior. (§ 6600, subd. (a); *Hubbart v. Superior Court, supra*, 19 Cal.4th at p. 1158.) An SVP inmate "shall not be kept in actual custody longer than two years unless a subsequent extended commitment is obtained from the court incident to the filing of a *new petition for commitment under this article* . . . ." (§ 6604, italics added.) The sole provision in the statutory scheme for a new petition is set forth in section 6601. This section requires that a new petition be supported by *two* mental health evaluations conducted by at least two practicing psychiatrists or psychologists in accordance with a standardized assessment protocol. (§ 6601, subds. (c) & (d).)

The DMH's interpretation of the statute differs. In its policy memorandum (dated Jan. 29, 1999), the DMH states: "Absent any clarifying language, the statutory requirement for the filing of an SVP extension at the end of the first two years appears to mandate that all procedures contained in WIC 6601 must be restarted as though all of the original evaluation requirements are required [*sic*]. In fact, the circumstances surrounding the extended commitment differ substantially from the circumstances of the initial commitment." Accordingly, it is the position of the DMH that the Legislature did not intend that all procedures required by section 6601 be followed for SVP extensions and that a single evaluation will suffice.

There is no support for DMH's belief regarding the intention of the Legislature on the applicability of section 6601. The Sixth District Court of Appeal recently held that the statutory language "indicates that the Legislature intended the procedures for obtaining a 'subsequent extended commitment' to be the same as the procedures for obtaining an initial commitment." (*Butler v. Superior Court* (2000) 78 Cal.App.4th 1171, 1180 [93 Cal.Rptr.2d 468].)

The People argue that section 6601 only applies, by its express terms, to prison inmates who are "in custody under the jurisdiction of the Department of Corrections . . . ." They claim that, since Peters, presently under the jurisdiction of the DMH, is not a prison inmate, section 6601 is, therefore, inapplicable.

The court in *Butler* soundly rejected this argument. "The fact that some of the preliminary procedures would not apply to an extended [SVP] commitment does not mean that none of the statutory requirements apply." (*Butler v. Superior Court, supra*, 78 Cal.App.4th at p. 1180.) Moreover, the People are unable to identify any portion of the SVPA that specifies the procedures to be used for filing a new petition, other than section 6601. The unacceptable conclusion is that without the benefit of section 6601, the People would be unable to bring a petition to extend an SVP commitment.

"[T]here is no canon against using common sense in construing laws as saying what they obviously mean." (*Roschen v. Ward* (1929) 279 U.S. 337, 339 [49 S.Ct. 336, 336, 336, 73 L.Ed. 722, 728].) "We avoid interpretations and constructions which defy common sense or which might lead to mischief or absurdity, including literal meanings which would lead to a result not intended by the Legislature. [Citations.]" (*Board of Retirement v. Santa Barbara County Grand Jury* (1997) 58 Cal.App.4th 1185, 1189 [68 Cal.Rptr.2d 607].)

A commonsense reading of the statutory scheme is that section 6601 necessarily comes into play whenever the state seeks to recommit an SVP.

This interpretation is consistent with the intent of SVP legislation and furthers the policies of those laws. (*Butler v. Superior Court, supra*, 78 Cal.App.4th at pp. 1179-1180.)

The People refer to the fact that proceedings to extend the commitment of a person found to be not guilty by reason of insanity need be premised only upon a single evaluation. (See Pen. Code, § 1026.5, subd. (b).) This argument must fail. First, this reading of the SVPA would require us to graft by implication the term "single evaluation" into sections 6600, subdivision (a), and 6604. We have no power to rewrite statutes. "To rewrite [a] statute is a legislative, rather than judicial, prerogative." (*Hofer v. Young* (1995) 38 Cal.App.4th 52, 57 [45 Cal.Rptr.2d 27].)

Second, statutes are to be interpreted by assuming that the Legislature was aware of the existing law at the time of the enactment of the SVPA. (*People v. McGuire* (1993) 14 Cal.App.4th 687, 694 [18 Cal.Rptr.2d 12] [Legislature "is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof."].) Since the SVPA was enacted after the laws governing criminal insanity pleas, the Legislature presumably was aware of the requirements for evaluation provisions. If the Legislature had wanted to include but a single evaluation in the SVPA, it would have done so. Its failure to do so persuades us that the Legislature did not intend to so limit the number of evaluations. (*People v. Superior Court (Ramirez)* (1999) 70 Cal.App.4th 1384, 1391 [83 Cal.Rptr.2d 402].)

The People would have the 1996 evaluation reports do double duty by supporting both the initial and recommitment petitions. We reject this assertion. There is no evidence that either of the authors of the 1996 reports has seen or examined Peters since 1996. Nor is there anything in the record to suggest that the authors of these reports intended that the reports be used in the recommitment process. Finally, the use of potentially stale reports subverts the manifest intent of the SVPA—the state must prove that the party suffers from a currently diagnosed mental disorder which predisposes him to engage in sexually violent criminal behavior. (§ 6600, subd. (a).) By the same token, a single-page cover letter by Dr. Robert Knapp cannot be reasonably construed, by any stretch of the imagination, to be deemed a report that was prepared in conformance with section 6600. (*Butler v. Superior Court, supra*, 78 Cal.App.4th at p. 1182.)

Section 6601, subdivisions (e) through (g), provide that if one of the professionals *performing* the evaluation does not concur that the person meets the SVP criteria, but the other evaluator agrees that the person does

meet those criteria, the DMH must then arrange for two additional independent evaluators to conduct further examinations. Peters contends that the evaluation of Dr. Jackson supports his assertion that there has been a disagreement between the two evaluators who examined him.

The People contend that Dr. Jackson was appointed because a DMH official erroneously believed that this was a *new* commitment proceeding and necessitated two evaluations. Moreover, the DMH believes that it was free to terminate Dr. Jackson before he had completed his final report. The People also contend that Dr. Jackson had not been trained to perform recommitment evaluations.

Recommitments require two evaluations. The DMH, thus, made no mistake in appointing Dr. Jackson to conduct a second evaluation. The DMH cannot pick and choose its evaluations and cannot simply "wave off" an evaluation merely because the report is not supportive of its own view of the case. For better or worse, the DMH is obliged to accept Dr. Jackson's report and then, as required by section 6601, subdivisions (e) through (g), it must appoint two additional independent evaluators to examine Peters.

### Disposition

We find no ambiguity in the SVPA and we shall, therefore, not disturb it on appeal. There is no question as to what needs be done to carry out the legislative mandate.

Let a peremptory writ of mandate issue directing respondent court to set aside its order denying Peters's motion to dismiss, and to enter a new order in conformance with the views expressed in this opinion. The order to show cause and the stay of proceedings, having served their purposes, are dissolved.

Gilbert, P. J., and Yegan, J., concurred.

On May 2, 2000, the opinion was modified to read as printed above.