[No. H021486. Sixth Dist. Sept. 18, 2000.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CRUZ COUNTY, Respondent;
ALLEN DOUGLAS BUTLER, Real Party in Interest.

[No. H021543. Sixth Dist. Sept. 18, 2000.]

MICHAEL THOMAS CHEEK, Petitioner, v.
THE SUPERIOR COURT OF SANTA CRUZ COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## Counsel

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Reneé A. Chacón, Bridget Billeter, Moona Nandi and Gerald A. Engler, Deputy Attorneys General, for Petitioner in No. H021486.

No appearance for Respondent.

Biggam, Christensen & Minsloff and Diana L. August for Real Party in Interest in No. H021486.

Lawrence Biggam, Public Defender, and William R. Weigel, Deputy Public Defender, for Petitioner in No. H021543.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, René A. Chacón and Bridget Billeter, Deputy Attorneys General, for Real Party in Interest in No. H021543.

## Opinion

**BAMATTRE-MANOUKIAN, J.**—Allen Douglas Butler and Michael Thomas Cheek were found to be sexually violent predators under the Sexually Violent Predators Act (Welf. & Inst. Code, § 6600 et seq.)[1] and were committed to the custody of the state Department of Mental Health (DMH) for two years. We affirmed those commitments in *People v. Butler* (1998) 68

---

[1]Unspecified section references are to the Welfare and Institutions Code.

Cal.App.4th 421 [80 Cal.Rptr.2d 357] (*Butler I*),[2] and *People v. Cheek* (1999) 75 Cal.App.4th 282 [89 Cal.Rptr.2d 125] (*Cheek*), review granted December 15, 1999, S083305.

Before Butler's and Cheek's initial two-year commitments expired, the district attorney filed petitions to extend their commitments for additional two-year periods. The petitions were each supported by one current evaluation from a DMH clinical psychologist. After the trial court found probable cause to believe that Butler and Cheek were likely to engage in sexually violent predatory criminal behavior upon their release (§ 6602), Butler and Cheek sought relief in this court. We considered the cases together, in *Butler v. Superior Court* (2000) 78 Cal.App.4th 1171 [93 Cal.Rptr.2d 468] (*Butler II*).[3] We held that the petitions to extend Butler's and Cheek's commitments should have been dismissed because the DMH had failed to conduct a "full evaluation," which involves two psychological or psychiatric evaluations of the person subject to commitment. (§ 6601, subds. (b) & (d).) We ordered the trial courts to vacate their findings of probable cause and to dismiss the petitions for extended commitment.

Before our decision in *Butler II* was final, the district attorney filed new petitions to extend Butler's and Cheek's commitments. These new petitions were supported by two psychological or psychiatric evaluations.

After we issued the remittiturs in *Butler II*, the trial courts dismissed the original petitions for extended commitment. In Butler's case, the trial court also dismissed the new petition for extended commitment and ordered Butler released immediately. In Cheek's case, the trial court refused to dismiss the new petition for extended commitment and refused to order Cheek released.

In Butler's case, the People sought relief in this court; Cheek likewise filed a petition for writ of mandate. In each case, we stayed the trial court's orders and issued an alternative writ.

We conclude that in Butler's case, the trial court erred by dismissing the district attorney's new petition for extended commitment, and therefore we will issue a writ of mandate commanding the superior court to vacate its ruling. In Cheek's case, the trial court properly refused to dismiss the new petition for extended commitment, and therefore we will deny the petition for writ of mandate.

---

[2] The California Supreme Court denied review of *Butler I* on March 24, 1999, and the United States Supreme Court denied certiorari on October 4, 1999. (*Butler v. California* (1999) 528 U.S. 865 [120 S.Ct. 160, 145 L.Ed.2d 136].)

[3] There was no petition for review of *Butler II*.

BACKGROUND

We summarized the Sexually Violent Predators Act (SVPA) in *Cheek, supra,* 75 Cal.App.4th at pages 286-289; *Butler I, supra,* 68 Cal.App.4th at pages 424-428; *Butler II, supra,* 78 Cal.App.4th at pages 1174-1177; and *People v. Superior Court (Howard)* (1999) 70 Cal.App.4th 136, 148-151 [82 Cal.Rptr.2d 481]. (See also *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1143-1149 [81 Cal.Rptr.2d 492, 969 P.2d 584].)

We summarized the SVPA proceedings in both Butler's and Cheek's cases in *Butler II, supra,* 78 Cal.App.4th at pages 1177-1178. We provide a brief description of those proceedings here.

On June 11, 1996, the District Attorney of Santa Cruz County filed a petition to commit Butler as a sexually violent predator (SVP). The petition alleged Butler had been convicted of two rapes, one in 1974 and one in 1976, and that those were sexually violent offenses under section 6600.[4] After a court trial, Butler was found to be an SVP.

On July 7, 1997, the Santa Cruz County District Attorney filed a petition to commit Cheek as an SVP. The petition alleged that Cheek had been convicted of numerous sexually violent offenses, including 1980 convictions of rape and forcible oral copulation, and a 1981 conviction of rape. He had also suffered a 1980 conviction of kidnapping. Cheek admitted the allegations in the petition.

Butler and Cheek were both committed to the DMH for two-year terms. Prior to the expiration of those terms, the district attorney filed petitions to extend their commitments for an additional two years (hereafter referred to as the original petitions for extended commitment). Butler and Cheek moved to dismiss the original petitions for extended commitment on the basis that they were supported by only one DMH evaluation. The trial courts denied the motions to dismiss and found probable cause to believe that Butler and Cheek were likely to engage in sexually violent predatory criminal behavior upon their release (§ 6602). Butler and Cheek then filed petitions for writ of mandate in this court.

In *Butler II,* we interpreted the portions of the SVPA pertinent to extending the commitment of an individual previously found to be a sexually violent predator. We explained that "[t]he only reference to recommitment is

---

[4]Butler's additional criminal history is described in *Butler I, supra,* 68 Cal.App.4th at pages 428-429. In addition to the two rape convictions, he had numerous other arrests and convictions for offenses such as assault, battery, burglary, robbery, and kidnapping.

contained in section 6604, which provides, in pertinent part: 'If the court or jury determines that the person is a sexually violent predator, the person shall be committed for two years to the custody of the State Department of Mental Health . . . and the person shall not be kept in actual custody longer than two years unless a subsequent extended commitment is obtained from the court incident to the filing of a new petition for commitment under this article . . . .' " (*Butler II, supra*, 78 Cal.App.4th at p. 1179.)

We concluded that "[t]he fact that the Legislature did not provide any specific procedures for the filing of a petition for recommitment indicates that it intended the recommitment procedures to be the same as the procedures for the filing of an initial petition for commitment, including the requirement that the person be evaluated by *two* psychologists or psychiatrists and the requirement that the DMH make available to the [district] attorney '[c]opies of the evaluation *reports*.' [Citation.]" (*Butler II, supra*, 78 Cal.App.4th at pp. 1179-1180, italics in original; accord, *Peters v. Superior Court* (2000) 79 Cal.App.4th 845 [94 Cal.Rptr.2d 350].)

Subsequent to *Butler II*, the Legislature enacted urgency legislation amending section 6604.1. (Stats. 2000, ch. 420, § 4, eff. Sept. 13, 2000.) The amendment essentially codified our holding that a "full evaluation" (§ 6601, subd. (b)) is required before the People can file a petition for extended commitment under the SVPA. Section 6604.1, subdivision (b) now provides: "The person shall be evaluated by two practicing psychologists or psychiatrists, or by one practicing psychologist and one practicing psychiatrist, designated by the State Department of Mental Health. The provisions of subdivisions (c) to (i), inclusive, of Section 6601 shall apply to evaluations performed for purposes of extended commitments. The rights, requirements, and procedures set forth in Section 6603 shall apply to extended commitment proceedings."

Our opinion in *Butler II* was filed on March 7, 2000. Our dispositional orders specified that the trial courts were to vacate their probable cause findings and dismiss the original petitions for extended commitment. (*Butler II, supra*, 78 Cal.App.4th at p. 1182.)

On April 19, 2000, before *Butler II* was final,[5] the district attorney filed new petitions for extended commitment as to both Butler and Cheek (hereafter referred to as "the new petitions for extended commitment"). The new petitions for extended commitment were each supported by two DMH evaluations, in accordance with our opinion in *Butler II*.

On May 10, 2000, the trial court held hearings in both Butler's and Cheek's cases. The cases were heard separately, in front of different judges. We summarize the proceedings in each case below.

---

[5]The remittiturs issued on May 9, 2000.

*Butler*

At Butler's May 10, 2000, hearing, the district attorney requested that the trial court hold the probable cause hearing on the new petition for extended commitment that day, so that the trial court would maintain jurisdiction. (See § 6602.5 [person cannot be placed in state hospital without a probable cause finding].) In the alternative, the district attorney requested that the trial court stay its ruling "to give us an opportunity to get to the Appellate Court to get some clarification as to what they meant."

On May 10, 2000, the district attorney also filed a petition to extend Butler's commitment for a third two-year period, as Butler's second period of commitment would have begun on May 14, 1998, and expired on May 14, 2000. (Former § 6604.1, subd. (a) [for extended commitments, "the term of commitment shall be from the date of the termination of the previous commitment"].) The district attorney requested that the trial court hold the probable cause hearing on that petition on May 13, 2000.

Butler argued that the trial court should dismiss the original petition for extended commitment and "find that there was insufficient probable cause presented." He further argued that the trial court should order his immediate release pursuant to section 6602, subdivision (a), which provides that "[i]f the judge determines there is not probable cause, he or she shall dismiss the petition and any person subject to parole shall report to parole." Butler argued, "[O]nce the petition is dismissed, [section] 6602 says the person has to be released, period."

The trial court made the following ruling: "[T]he court is going to follow the Appellate Court's directive, and that is to vacate the ruling there was probable cause and to enter a new ruling dismissing the petition in this matter, finding that there was not probable cause . . . . [¶] I have also considered the People's suggestion to stay the order for some reasonable period of time so that they can take this matter up. I don't know if there is anything that would allow for that under the code, and I think that it is more appropriate to follow [section] 6602 strictly rather than try to carve out some exception to this. So that is the Court's ruling at this time."

The trial court "decided not to proceed" on the new petition for extended commitment and ruled that the district attorney could not "go forward" on the May 10, 2000, petition for extended commitment. The trial court ordered Butler released immediately. Notwithstanding that order, Butler was apparently held in jail pursuant to the district attorney's request until 9:15 p.m. that night, at which time Presiding Justice Cottle signed a temporary stay

order. The following day, May 11, 2000, we filed an order continuing the stay.

*Cheek*

At Cheek's May 10, 2000, hearing, the trial court vacated its prior finding of probable cause and dismissed the original petition for extended commitment pursuant to our dispositional order in *Butler II*.

Cheek argued that he should be released pursuant to section 6602, subdivision (a). The trial court disagreed: "This court actually did not make a finding that there was no probable cause. The Court of Appeal absolutely mandated that . . . this trial court dismiss the petition because of the insufficiency of the evidence at the time of the hearing, based on the fact that it was on the opinion of one doctor and not two . . . ."

Cheek indicated that he wanted to file a demurrer to the new petition for extended commitment on "statutory, as well as jurisdictional, res judicata grounds." However, he had not yet prepared any written papers in support of his demurrer. He asked the trial court to "set us a hearing on that issue."

Expressing concern about losing jurisdiction, the trial court overruled Cheek's demurrer but granted him "leave to file his demurrer and have a formal hearing thereon" at a later date. The trial court then proceeded to conduct the probable cause hearing; it ultimately found "that there is probable cause to hold Mr. Cheek for trial as a potential sexually violent predator . . . ."

## DISCUSSION

■ The question we consider here is whether the trial courts should have proceeded on the new petitions for extended commitment, in light of the orders we issued in *Butler II:* to dismiss the original petitions for extended commitment and vacate the probable cause findings.

Butler and Cheek rely primarily on section 6602. At the time of the May 10, 2000, hearings, former section 6602 provided in full: "(a) A judge of the superior court shall review the petition and shall determine whether there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release. The person named in the petition shall be entitled to assistance of counsel at the probable cause hearing. *If the judge determines there is not probable cause, he or she shall dismiss the petition and any person subject to*

*parole shall report to parole.* If the judge determines that there is probable cause, the judge shall order that the person remain in custody in a secure facility until a trial is completed and shall order that a trial be conducted to determine whether the person is, by reason of a diagnosed mental disorder, a danger to the health and safety of others in that the person is likely to engage in acts of sexual violence upon his or her release from the jurisdiction of the Department of Corrections or other secure facility. [¶] (b) The court shall notify the State Department of Mental Health of the outcome of the probable cause hearing by forwarding to the department a copy of the minute order of the court within 15 days of the decision."[6] (Italics added.)

The italicized sentence of section 6602 requires the trial court to dismiss an SVPA petition and release the person who is the subject of the petition if the trial court determines there is "not probable cause" to believe that the person is an SVP. Seizing on this provision, Butler and Cheek contend that they should have been released when the trial courts vacated the findings of probable cause as to the original petitions for extended commitment. They also point out that section 6602 does not provide for the filing of a new petition for commitment once the trial court finds that there is "not probable cause," and contend that the trial courts had no authority to permit the People to file new petitions for commitment.

In construing section 6602, we apply settled rules of statutory construction. ██ " 'The goal of statutory construction is to ascertain and effectuate the intent of the Legislature. [Citation.] Ordinarily, the words of the statute provide the most reliable indication of legislative intent. [Citation.] When the statutory language is ambiguous, the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes. [Citations.]' [Citation.] ' "When the language is susceptible of more than one reasonable interpretation . . . , we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." ' [Citation.]" (*People v. Jefferson* (1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441].)

██ We conclude, based on the language of the statute, that section 6602, subdivision (a) requires the release of the person subject to the petition

---

[6]Section 6602 was subsequently amended. (Stats. 2000, ch. 41, §§ 1-3, eff. June 26, 2000.) Subdivision (a) now specifies that "[u]pon the commencement of the probable cause hearing, the person shall remain in custody pending the completion of the probable cause hearing." Subdivision (b) now provides: "The probable cause hearing shall not be continued except upon a showing of good cause by the party requesting the continuance." The provisions of former subdivision (b) were placed in subdivision (c). These changes do not affect our analysis.

only if the trial court makes a finding, *on the merits*, that there is "not probable cause." Section 6602 sets forth the procedures to be followed at the probable cause hearing. It requires the trial court to "review the petition and . . . determine whether there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6602, subd. (a).) It then sets forth the consequences of a finding that "there is probable cause" and the consequences of a finding that "there is not probable cause." (*Ibid.*) Plainly, a finding as to whether or not "there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release" (*ibid.*) is a finding on the merits.

In the instant cases, the trial courts did not dismiss the original petitions for extended commitment because they found, on the merits, that there was "not probable cause." (§ 6602, subd. (a).) Rather, the trial courts *found probable cause,* on the basis of one psychiatric report, to believe that Butler and Cheek were each "likely to engage in sexually violent predatory criminal behavior" upon release. (*Ibid.*) The trial courts subsequently vacated their probable cause findings, pursuant to this court's directives, because Butler and Cheek had not been subject to "full evaluation[s]"—that is, evaluations "by two practicing psychiatrists or psychologists, or one practicing psychiatrist and one practicing psychologist" (§ 6601, subd. (d))—before those petitions were filed. (§ 6601, subd. (b); *Butler II, supra,* 78 Cal.App.4th at p. 1182.)

Our opinion in *Butler II* made it clear that the trial courts were to dismiss the petition for commitment on *procedural grounds* rather than on the merits: "We conclude that before the district attorney may file 'a new petition for commitment' (§ 6604), the DMH must conduct a 'full evaluation' of the person subject to the petition as provided in section 6601, which includes evaluation of the person 'by two practicing psychiatrists or psychologists, or one practicing psychiatrist and one practicing psychologist.' (§ 6601, subd. (d).) As neither petitioner was subject to a 'full evaluation' before the instant petitions for commitment were filed, the petitions should have been dismissed. . . ." (*Butler II, supra,* 78 Cal.App.4th at p. 1182, fn. omitted.) We did not express any opinion as to whether or not there was probable cause to believe that Butler and Cheek were "likely to engage in sexually violent predatory criminal behavior upon [their] release." (§ 6602, subd. (a).) Moreover, we expressly indicated that we anticipated the People would file new petitions for extended commitment and therefore provided direction regarding the length of the commitment terms: "We note that if petitioners are ultimately subject to subsequent extended commitments upon the proper

filing of new petitions for commitment, such extended commitments would be deemed to begin on the date upon which petitioners' initial commitments terminated. [Citation.]" (*Butler II, supra,* 78 Cal.App.4th at p. 1182, fn. 8.)

Butler and Cheek both interpret our opinion in *Butler II* as stating that there was insufficient evidence at the probable cause hearings, because the People provided the trial court with only one written psychological evaluation. They contend that the People are required to provide two such evaluations, not simply as a prerequisite to the filing of a petition for extended commitment, but as the evidence upon which the trial court makes the probable cause determination.

It is true that the two written psychological evaluations may form the basis of the trial court's probable cause determination. (See *In re Parker* (1998) 60 Cal.App.4th 1453, 1468-1470 [71 Cal.Rptr.2d 167]; *Butler I, supra,* 68 Cal.App.4th at p. 434.) However, the two written psychological evaluations are also a procedural requirement: there must be a " 'full evaluation' " before a petition for extended commitment can be filed. (*Butler, II, supra,* 78 Cal.App.4th at p. 1182; see § 6601, subds. (b) & (d).) The issue in *Butler II* was whether the petitions for commitment complied with section 6601, in light of the fact Butler and Cheek had been evaluated by only one psychologist or psychiatrist and thus had not been subject to " 'full evaluation[s].' " (*Butler II, supra,* 78 Cal.App.4th at p. 1182.) Because the procedural requirement of a "full evaluation" (§ 6601, subd. (b)) had not been met in either case, we ordered the trial courts to dismiss the original petitions for extended commitment. In addition, because the trial courts had erred by proceeding on the original petitions for extended commitment, we further ordered the trial courts to vacate their findings of probable cause. Thus, we reiterate that in *Butler II*, we found a procedural error rather than an insufficiency in the evidence that formed the basis of the trial courts' probable cause findings. We conclude that section 6602 did not require the trial courts to release Butler and Cheek upon the dismissal of the original petitions for extended commitment.

For the same reasons, we also conclude that the trial courts were required to permit the People to file the new petitions for extended commitment after the probable cause findings were vacated. It is true that section 6602 does not contain any provision for the filing of a new petition after a finding that there is "not probable cause." (§ 6602, subd. (a).) However, here the trial courts *did find probable cause.* They vacated their probable cause findings only because Butler and Cheek had not been subject to "full evaluation[s]" before the original petitions were filed. (§ 6601, subd. (b).)

Butler and Cheek were previously determined to be SVP's. Before their initial commitments expired, the People filed the original petitions to extend

their commitments. Those petitions were defective because Butler and Cheek had not been subject to "full evaluation[s]" before the petitions were filed. (§ 6601, subd. (b); see *Butler II, supra,* 78 Cal.App.4th at p. 1182.) Before the two-year periods of extended commitment had expired, the People obtained additional evaluation reports as to both Butler and Cheek, so that the "full evaluation" requirement was met in each case. (§ 6601, subd. (b).) The People then filed new petitions for commitment, attaching the reports of the two evaluators. Because the People properly followed the procedures set forth in section 6601 prior to filing the new petitions for extended commitment, the trial court was required to accept those petitions. (See § 6601, subd. (i) ["a petition for commitment *shall* be filed in the superior court"], italics added.)

Butler and Cheek point to Penal Code sections 1387 and 1387.1 as proof that the Legislature knows how to establish a procedure for refiling petitions.[7] They assert that because the Legislature did not include such provisions in the SVPA, we should ascertain a legislative intent that refiling is not permitted. We disagree. Penal Code sections 1387 and 1387.1 place *limitations* on the People's right to refile charges in *criminal* cases, and are therefore not relevant to the question whether the People may refile a petition for *civil* commitment under the SVPA.

Butler and Cheek next argue that new petitions for extended commitment are barred by principles of res judicata. They contend that the new petitions involve the same issues and the same parties as the original petitions, and that the dismissals of the original petitions constituted final judgments on the merits. (See *Overstreet v. County of Butte* (1962) 57 Cal.2d 504, 506 [20 Cal.Rptr. 631, 370 P.2d 335].) We summarily reject this argument. As already explained, the trial courts *did not reach a judgment on the merits* when they vacated their findings of probable cause as to the original petitions for extended commitment. Pursuant to our directive in *Butler II, supra,* 78 Cal.App.4th at page 1182, the trial courts vacated the probable cause findings and dismissed the original petitions for extended commitment because the People had not followed the proper procedures, in that they had filed the original petitions for extended commitment without first subjecting Butler and Cheek to "full evaluation[s]" as provided in section 6601.

Butler and Cheek argue that to allow the People to refile a petition for commitment would violate their due process rights. They assert that the SVP

---

[7]Penal Code section 1387, subdivision (a) provides that "[a]n order terminating an action pursuant to this chapter, or Section 859b, 861, 871, or 995, is a bar to any other prosecution for the same offense" except under certain circumstances. Penal Code section 1387.1 provides that under certain circumstances, "the people shall be permitted one additional opportunity to refile charges."

commitment procedure could go on indefinitely if the prosecution could simply refile a petition after a dismissal for lack of probable cause. Butler and Cheek also argue that their right to equal protection would be violated if the trial courts were not required to release them when the probable cause findings were vacated. They note that in other SVPA cases, where the trial court finds a lack of probable cause, it orders the release of the person subject to the petition.

Again, Butler's and Cheek's arguments are premised upon the faulty assertion that the trial courts made a finding that there was "not probable cause" to believe that they were "likely to engage in sexually violent predatory criminal behavior" upon their release. (§ 6602, subd. (a).) We reiterate that the trial courts here *did find probable cause* and that those probable cause findings were vacated on procedural grounds. Under these circumstances, to permit the filing of the new petitions for extended commitment would not violate Butler's and Cheek's due process or equal protection rights.

We conclude that, in Butler's case, the trial court erred by dismissing the new petition for extended commitment and ordering Butler's release. In addition, the trial court erred by dismissing the May 10, 2000, petition to extend Butler's commitment for a third two-year term. The trial court should have permitted the filing of those petitions and proceeded to conduct a probable cause hearing so that Butler would "remain in custody in a secure facility until a trial is completed." (§ 6602, subd. (a); see also § 6602.5 [probable cause finding is prerequisite to placement in a state hospital].)

In Cheek's case, we conclude that the trial court properly refused to dismiss the new petition for extended commitment and properly refused to order Cheek's release. We now turn to several additional claims raised by Cheek.

### Cheek's Separate Claims

██ Cheek argues that the trial court denied him due process by failing to give him an opportunity to litigate his demurrer prior to the probable cause hearing on the new petition for extended commitment. However, as Cheek had not yet filed a written demurrer, the trial court granted Cheek leave to file a demurrer and set June 23, 2000, as the hearing date. Moreover, the new petition for extended commitment was filed on April 19, 2000, and *the probable cause hearing was not held until May 10, 2000*. Although generally a person may file a demurrer any time within 30 days of the filing of the complaint or petition (Code Civ. Proc., § 430.40), Cheek had ample time to file the demurrer prior to the probable cause hearing.

Finally, any error was harmless under the circumstances here. Cheek specified that he would demur to the new petition for extended commitment on "statutory, as well as jurisdictional, res judicata grounds." We have concluded above that there was no statutory defense to the filing of the new petition for extended commitment, that the trial court had jurisdiction over the new petition, and that the petition was not barred by principles of res judicata. (See Code Civ. Proc., § 430.10 [setting forth grounds for demurrer].) Thus, even if the trial court erred by precluding Cheek from litigating his demurrer prior to the probable cause hearing, the error was harmless because the demurrer lacked merit.

Finally, Cheek argues that the trial court erred by holding the probable cause hearing on May 10, 2000, because that was the same day that counsel was appointed to represent Cheek on the new petition for extended commitment. He contends that therefore, counsel had no opportunity to review the second evaluation.

■ "[D]ue process under the SVP Act is not measured by the rights accorded a defendant in criminal proceedings, but by the standard applicable to civil proceedings: The extent of due process protection which must be accorded a civil litigant is tested by consideration of four factors: (1) ' " 'the private interest [which] will be affected by the official action' " '; (2) ' " 'the risk of an erroneous deprivation . . . through the procedures used' " '; (3) ' " 'the probable value, if any, of additional or substitute procedural safeguards,' " ' and (4) ' "the . . . interest in informing individuals . . . of the action and in [allowing] them to present their side of the story." ' [Citation.]" (*People v. Superior Court (Howard)*, *supra*, 70 Cal.App.4th at p. 154; see also *In re Parker*, *supra*, 60 Cal.App.4th 1453, 1462-1463.) "[W]hile the alleged sexually violent predator has a strong liberty interest, the government also has a strong interest in protecting the public from persons who are dangerous to others. (See *Hubbart v. Superior Court*, *supra*, 19 Cal.4th at p. 1151.)" (*People v. Superior Court (Howard)*, *supra*, 70 Cal.App.4th at p. 155.)

■ As the People point out, counsel (a deputy public defender) had been representing Cheek throughout all of the SVPA proceedings. The new petition for extended commitment was served on the public defender's office on April 18, 2000. Thus, counsel had over three weeks to review the new evaluation prior to the probable cause hearing on May 10, 2000.

We conclude that, in Cheek's case, the trial court did not err by permitting the People to file the new petition for extended commitment or by precluding Cheek from litigating his demurrer prior to the probable cause hearing.

We further conclude that the trial court did not err by conducting the probable cause hearing on that petition on May 10, 2000.

## DISPOSITION

*People v. Superior Court* (*Butler*), No. H021486: Let a peremptory writ issue commanding the superior court to vacate its ruling dismissing the April 19, 2000, petition for extended commitment, to vacate its ruling dismissing the May 10, 2000, petition for extended commitment, and to enter new rulings permitting the filing of those petitions for extended commitment.

*Cheek v. Superior Court*, No. H021543: The petition for writ of mandate is denied.

Premo, Acting P. J., and Wunderlich, J., concurred.

A petition for a rehearing was denied October 10, 2000, and the opinion was modified to read as printed above. The petition of real party in interest Allen Douglas Butler for review by the Supreme Court was denied January 10, 2001. Mosk, J., was of the opinion that the petition should be granted.