[No. F034537. Fifth Dist. Nov. 30, 2000.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF STANISLAUS COUNTY, Respondent;
BUDDY GARY, Real Party in Interest.

**COUNSEL**

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, and Paul D. Gifford, Assistant Attorney General, for Petitioner.

No appearance for Respondent.

Tim Bazar, Public Defender, and Greg Spiering, Deputy Public Defender, for Real Party in Interest.

**OPINION**

**WISEMAN, J.—**

### INTRODUCTION

The Sexually Violent Predators Act (SVPA or the Act) was enacted October 11, 1995, effective January 1, 1996, and codified in Welfare and

Institutions Code[1] section 6600 et seq. (Stats. 1995, chs. 762, 763.) In section 1, the Legislature set forth its findings and summarized the purpose of the new law, which was to identify an extremely dangerous group of violent sexual predators likely to engage in acts of sexual violence upon release from prison, and commit them for treatment.

A "sexually violent predator" (SVP) is "a person who has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a).) Sexually violent offenses, for purposes of the SVPA, are listed in section 6600, subdivision (b).

If the Director of the Department of Corrections determines that a prisoner may be an SVP, the director shall refer that person for an initial screening evaluation at least six months prior to his or her scheduled release date. (§ 6601, subds. (a) & (b).) If it is determined that the person is likely to be an SVP, he or she is then referred to the State Department of Mental Health (DMH) for a full SVP evaluation by two practicing psychiatrists or psychologists in accordance with a standardized assessment protocol. (§ 6601, subds. (b) & (d).)

"The standardized assessment protocol shall require assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders. Risk factors to be considered shall include criminal and psychosexual history, type, degree, and duration of sexual deviance, and severity of mental disorder." (§ 6601, subd. (c).)

If both the evaluators concur the person "has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody," the DMH requests a petition for commitment under section 6602. The DMH then forwards the evaluations and supporting documents to the county of the person's latest conviction. (§ 6601, subds. (d) & (i).) If the county's designated attorney agrees with the recommendation, a petition for commitment is filed in superior court. (§ 6601, subd. (i).)

The respondent named in the petition is entitled to assistance of counsel before the superior court. At the initial hearing, if the judge determines there is probable cause to believe the respondent is likely to engage in sexually

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

violent predatory criminal behavior upon his or her release from prison, the judge shall order a trial on that issue. (§ 6602.)

The respondent is entitled to a trial by jury, the assistance of counsel and the right to retain experts or professional persons to perform further evaluations. He or she is also entitled to have access to all relevant medical and psychological records and reports. (§ 6603, subd. (a).) A unanimous verdict is required in any jury trial. (§ 6603, subd. (d).)

The state must prove the respondent is an SVP "beyond a reasonable doubt." (§ 6604.) A person found to be an SVP is committed for a period of two years to the custody of the DMH for appropriate treatment and confinement in a secure facility. The SVP shall not be kept in confinement longer than two years unless a new petition is filed and an extended commitment is obtained from the court. (*Ibid.*)

Upon commitment, the SVP must be provided with treatment for his or her diagnosed mental disorder, whether or not it is found the person is amenable to treatment. (§ 6606, subds. (a) & (b).) The treatment shall be consistent with current institutional standards for the treatment of sex offenders. (§ 6606, subd. (c).)

## PROCEDURAL HISTORY

On April 14, 1997, the Stanislaus County District Attorney filed a petition to commit Buddy Gary as an SVP pursuant to section 6600 et seq. Thereafter, a jury found Gary to be an SVP on December 12, 1997. On December 18, 1997, the court committed Gary to Atascadero State Hospital for two years, beginning on December 12, 1997, to December 12, 1999.

A petition to extend Gary's commitment as an SVP was apparently filed in November 1999. On November 23, 1999, the petition came on for hearing. However, the matter was continued to November 30, 1999, to determine whether Gary met the criteria for recommitment. At the November 30 hearing, the People advised the court that they were waiting to have Gary reevaluated. One evaluation by Dawn Starr, Ph.D., dated August 19, 1999, accompanied the petition. Dr. Starr recommended against recommitting Gary as an SVP. Through his counsel, Gary objected to any reevaluation. The matter was ordered "dropped" based on the People's request, pending further information from the DMH.

On December 9, 1999, a petition for extension of Gary's commitment as an SVP pursuant to section 6604 was filed. That day the court granted the

People's request for an order shortening time and set the matter for hearing on December 10, 1999, at 8:30 a.m. The petition was supported by two evaluations. One was by Dr. Starr, dated August 19, 1999. Robert M. Owen, Ph.D., authored the second evaluation, which was dated December 4, 1999. Dr. Owen concluded Gary met the SVP criteria, and recommended an extension of Gary's commitment.

On December 10, 1999, the matter came on for hearing at 8:30 a.m. Gary's counsel objected to the short notice, which did not comply with the order shortening time. After a brief continuance to allow Gary's counsel to prepare, the court heard the matter at 11:00 a.m. The court noted that pursuant to section 6601, subdivision (d), the petition should not have been filed because it was not supported by two evaluations concurring that Gary is an SVP. Instead, one of the evaluators concluded Gary was not an SVP. The court further noted that the proper procedure in this situation prior to filing the petition was for the DMH to arrange for an examination of Gary by two independent evaluators under section 6601, subdivision (e). Under section 6601, subdivision (f), the court concluded that only if both of these evaluators concurred that Gary met the criteria for commitment should the petition have been filed. The court then dismissed the petition on the motion of Gary's counsel.

The People filed a petition for writ of mandate or other appropriate relief in this court on December 13, 1999, and requested an immediate stay. We filed an order that same date, granting a stay. In the meantime, the People also informally requested the superior court to place the matter back on calendar for a motion for reconsideration. The matter came on for hearing on December 13, 1999, at 8:30 a.m. The court agreed to reconsider the matter, and called a recess to review the documents submitted by the People in support of the motion. The court came back on the record at 11:26 a.m., and noted that it had received from counsel a stay order issued by this court. Counsel agreed with the court that the Court of Appeal stay order had rendered the motion for reconsideration moot.

On August 31, 2000, after a finding of good cause to do so, we filed an order to show cause why the relief prayed for in the People's petition for writ of mandate should not be granted. Gary was ordered to file a return to the petition, and the People were given leave to file a traverse to the return.

Gary filed a return to the petition on October 3, 2000. The People filed a traverse to the return on October 10, 2000.

DISCUSSION

*I. Dismissal of the petition*

■ The People contend there is no requirement that a recommitment petition proceed only if supported by two concurring evaluations. Consequently, the People conclude the superior court exceeded its jurisdiction and abused its discretion by dismissing the petition, which was supported by conflicting evaluations. The People request that we issue a writ of mandate directing the superior court to vacate its order of dismissal and allow the People to proceed with the petition to extend Gary's commitment as an SVP. We reject the People's contention and deny the petition.

Under section 6604, if a person is determined to be an SVP, "the person shall be committed for two years to the custody of the State Department of Mental Health for appropriate treatment and confinement in a secure facility . . . , and the person shall not be kept in actual custody longer than two years unless a subsequent extended commitment is obtained from the court incident to the filing of a new petition for commitment under this article or unless the term of commitment changes pursuant to subdivision (e) of Section 6605."

■ "The court's role in construing a statute is to 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citations.] In determining the Legislature's intent, a court looks first to the words of the statute. [Citation.] '[I]t is the language of the statute itself that has successfully braved the legislative gauntlet.' [Citation.]

"When looking to the words of the statute, a court gives the language its usual, ordinary meaning. [Citations.] If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs. [Citations.]" (*People v. Snook* (1997) 16 Cal.4th 1210, 1215 [69 Cal.Rptr.2d 615, 947 P.2d 808].)

■ The People opine that the statutory scheme is unclear. They fault the superior court for failing to recognize the significant differences between an original commitment and a "subsequent extended commitment." (§ 6604.) They urge that we use common sense rather than apply the established rules of statutory construction in construing section 6604. However, application of the plain meaning rule is the only way to make sense, common or technical, of the statutory scheme. We cannot rewrite the statute to conform to the People's notion of what the Legislature intended. (*Hofer v. Young* (1995) 38 Cal.App.4th 52, 57 [45 Cal.Rptr.2d 27] [rewriting of a statute is a legislative,

not a judicial, prerogative].) Nor can we simply ignore the language used in attempting to determine what the Legislature intended since we are bound by the doctrine of stare decisis to first look to the words of a statute. (*People v. Snook, supra,* 16 Cal.4th at p. 1215; Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) With these constraints in mind, we examine the language and statutory scheme.

The People correctly note that section 6604 does not specify what requirements, if any, must be met before the filing of "a new petition." It does, however, refer to the filing of a new petition "under this article." There is no dispute that "this article" is article 4, chapter 2, part 2 of division 6 of the Welfare and Institutions Code, including sections 6600 through 6609.3, commonly referred to as the SVPA. The People acknowledge that the reference to "this article" suggests the need for adherence in extended commitment proceedings to the procedures of section 6601 for initial SVP referrals, evaluations and commitments. The People "submit, however, that such a myopic, literal construction of the [SVP] statutes would offend common sense, blur any logical distinction between original and subsequent proceedings and violate the underlying purpose of the statutory scheme."

The People note that subdivisions (a) and (b) of section 6601 provide for a reference for evaluation and screening by the Department of Corrections and the Board of Prison Terms when the subject is in custody under the jurisdiction of the Department of Corrections. Thus, these subdivisions contemplate their application to original petition filings. When the new petition for commitment was filed in this case, Gary was no longer in custody under the jurisdiction of the Department of Corrections. Instead, he was committed to the DMH. The People suggest that because subdivisions (a) and (b) of section 6601 do not apply to a new petition for commitment under section 6604, none of the other requirements of section 6601 apply, including subdivision (d)'s requirement of concurrence by two evaluators. However, this construction is not supported by the statutory scheme. While the only section referring to prefiling requirements for a petition under the SVPA is section 6601, that section prescribes a multistep administrative process. It does not distinguish between original petitions and new petitions filed at the conclusion of a two-year commitment. Further, as discussed above, by referring to "this article," the Legislature evidenced its intent in section 6604 that the provisions of section 6601, including the requirement of two concurring evaluations articulated in subdivision (d), should apply to the extent possible.

"The fact that some of the preliminary procedures would not apply to an extended commitment does not mean that none of the statutory requirements

apply. Clearly, the person will not be in custody under the jurisdiction of the Department of Corrections at the time the recommitment process begins; rather, the person will be in custody under the jurisdiction of the DMH. Thus, there will be no need for the initial determination by the Director of the Department of Corrections that the person 'may be a sexually violent predator' (§ 6601, subd. (a)) and no need for the initial screening by the Department of Corrections and the Board of Prison Terms to determine whether 'the person is likely to be a sexually violent predator' (§ 6601, subd. (b)). The recommitment procedure would begin with the 'full evaluation' conducted by the DMH. (§ 6601, subds. (b) & (c).)" (*Butler v. Superior Court* (2000) 78 Cal.App.4th 1171, 1180-1181 [93 Cal.Rptr.2d 468] (*Butler II*); accord, *Peters v. Superior Court* (2000) 79 Cal.App.4th 845, 849 [94 Cal.Rptr.2d 350].)

While the People may believe that such a construction is "myopic," this belief should be shared with the Legislature so the statute may be rewritten to take into consideration the People's concerns. However, we disagree that the above construction of the language lacks common sense. To the contrary, "[a] commonsense reading of the statutory scheme is that section 6601 necessarily comes into play whenever the state seeks to recommit an SVP." (*Peters v. Superior Court, supra,* 79 Cal.App.4th at p. 849.) The mere fact that some of the procedural steps in section 6601 are inapplicable to a new petition for commitment does not support a conclusion that none of the steps should be followed. Section 6601 is the only section prescribing prefiling administrative requirements. Subdivisions (c) through (i) can be followed before filing a new petition for commitment as well as before filing an original petition, even though the person is no longer in the custody of the Department of Corrections. Nothing in the statutory language or legislative history indicates a legislative intent to eliminate all administrative steps precedent to filing a new petition for commitment. Section 6604 requires a "new petition for commitment" and section 6601, subdivision (d) sets forth a petition for commitment prerequisite. Thus, we conclude that section 6601, subdivision (d) required two concurring evaluations that Gary is an SVP before a new petition could be filed.

The People also point out that an SVP previously committed to the DMH has been treated and observed by mental health professionals regularly for two years. Therefore, when the DMH asks for an SVP's commitment to be extended, there should not be any concern about proceeding with a recommitment prematurely or improperly. This is a valid point, to the extent the DMH has followed the procedures set forth in section 6601 on a case-by-case basis. In other words, since the SVP will have been treated and observed by mental health officials for about two years, it is reasonable to

expect that some persons will have benefited from the treatment so they no longer pose a danger to the health and safety of others. The Legislature's requirement that the DMH evaluate these persons "in accordance with a standardized assessment protocol . . . to determine whether the person is a sexually violent predator as defined in this article . . ." (§ 6601, subd. (c)) ensures that extended commitment proceedings for only those persons continuing to meet the SVP criteria are initiated. Those that no longer qualify under the section 6601 requirements are to be released at the end of their two-year commitment. (See *In re Parker* (1998) 60 Cal.App.4th 1453, 1466 [71 Cal.Rptr.2d 167] ["the Act intends to confine the SVP for treatment for a period only so long as the SVP's mental disorder continues"].)

As in the original commitment process, section 6601, subdivisions (c) through (h) guide the Director of the DMH in screening potential SVP's. The requirements of these subdivisions may not simply be ignored. To do so would undermine the director's determination of which persons to refer for a petition for recommitment. At a minimum, absent any standards, the director's decision will be completely discretionary and could lead to unchecked abuse and arbitrary results. In fact, here, the Director of the DMH referred Gary for a petition to extend commitment even though the only current evaluation attached to the request had determined Gary did not meet the SVP criteria. It is highly unlikely the Legislature intended an arbitrary application simply because the request is for an extended commitment as opposed to an original one. Absent a clear direction from the Legislature that this was its intent, we reject this construction because it lacks common sense, denies due process, and raises potential equal protection concerns. "We avoid interpretations and constructions which defy common sense or which might lead to mischief or absurdity . . . ." (*Board of Retirement v. Santa Barbara County Grand Jury* (1997) 58 Cal.App.4th 1185, 1189 [68 Cal.Rptr.2d 607].)

After dropping the petition in November 1999, the DMH provided an additional current evaluation that concluded Gary is an SVP. The People argue that one professional evaluation should not only be sufficient to support a recommitment petition requested by the DMH, but also a finding beyond a reasonable doubt that the person is an SVP. The People fail to identify any portion of the SPVA that would support these arguments. Indeed, "[t]he Legislature specifically provided that the DMH may not request a petition for commitment if only one of two evaluators concludes that the person meets the criteria for commitment under the SVPA. (§ 6601, subd. (e).)" (*Butler II, supra*, 78 Cal.App.4th at p. 1180.)

The foregoing statutory and case law notwithstanding, the sole support cited by the People for their argument is, by way of example, Penal Code

section 2970. However, the opposite argument has greater force. The Legislature has shown that when it intends to relax the requirements applicable to a petition for recommitment in other civil commitment programs, it expressly knows how to do so. Penal Code section 2970 provides an example. It authorizes the filing of a petition for continued involuntary treatment of a mentally disordered offender upon receipt of a single written evaluation from specified officials, while the original decision to retain the prisoner for mental health treatment requires concurrence of two professionals under Penal Code section 2962. As another example, we look to section 6316.2, the former mentally disordered sex offender (MDSO) law. It authorized the prosecuting attorney to file a petition for recommitment under the former MDSO law if the Director of the DMH had good cause to believe the person met the requirements for an extended commitment and submitted supporting evaluations and the case file. Yet, an original commitment under that law required evaluations by at least two professionals. Consequently, by not expressing some different procedure for the filing of a new petition pursuant to section 6604, the Legislature indicated its intention to require the same procedure that precedes the filing of an original petition, to the extent possible. (*Butler II, supra,* 78 Cal.App.4th at pp. 1181-1182; cf. *In re Parker, supra,* 60 Cal.App.4th at p. 1466.)

As in *Butler II,* the court in *Peters* rejected a similar argument:

"The People refer to the fact that proceedings to extend the commitment of a person found to be not guilty by reason of insanity need be premised only upon a single evaluation. (See Pen. Code, § 1026.5, subd. (b).) This argument must fail. First, this reading of the SVPA would require us to graft by implication the term 'single evaluation' into sections 6600, subdivision (a), and 6604. We have no power to rewrite statutes. 'To rewrite [a] statute is a legislative, rather than judicial, prerogative.' [Citation.]

"Second, statutes are to be interpreted by assuming that the Legislature was aware of the existing law at the time of the enactment of the SVPA. (*People v. McGuire* (1993) 14 Cal.App.4th 687, 694 [18 Cal.Rptr.2d 12] [Legislature 'is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof.'].) Since the SVPA was enacted after the laws governing criminal insanity pleas, the Legislature presumably was aware of the requirements for evaluation provisions. If the Legislature had wanted to include but a single evaluation in the SVPA, it would have done so. Its failure to do so persuades us that the Legislature did not intend to so limit the number of evaluations. [Citation.]" (*Peters v. Superior Court, supra,* 79 Cal.App.4th at p. 850.)

Further, the legislative response to the *Butler II* case buttresses the interpretation we set forth earlier. (See *People v. Cole* (1982) 31 Cal.3d 568, 577 [183 Cal.Rptr. 350, 645 P.2d 1182].) In urgency legislation, effective September 13, 2000, the Legislature repealed and amended section 6604.1 so that it now provides: "(b) The person shall be evaluated by two practicing psychologists or psychiatrists, or by one practicing psychologist and one practicing psychiatrist, designated by the State Department of Mental Health. *The provisions of subdivisions (c) to (i), inclusive, of Section 6601 shall apply to evaluations performed for purposes of extended commitments.* The rights, requirements, and procedures set forth in Section 6603 shall apply to extended commitment proceedings." (Stats. 2000, ch. 420, § 4, italics added.)

## II. Failure to grant a continuance

■ The People also argue the superior court erred by dismissing the petition without waiting to see whether two additional evaluations were going to be provided under section 6601, subdivision (e). The People, however, never asked the court for more time. To the contrary, the People placed the matter on calendar and the court agreed to shorten the time based on the People's request on December 9, 1999. When the matter was heard on December 10, 1999 at 8:30 a.m. and then again at approximately 11:00 a.m., the People made no request for a continuance. Instead, the People's position was that because this involved a recommitment, Gary was not even entitled to another probable cause hearing, an argument the People have apparently abandoned for purposes of this writ petition. Further, in making its ruling, the court stated:

"Technically what the Court notes is that two evaluators—first of all, the Department of Mental Health should never have filed the request for hearing in November based on their own recommendation that he not be recommitted when that matter was dropped, and they had a second evaluator evaluate Mr. Gary, which they should have done before they did the first one.

"The second one came to the conclusion that Mr. Gary was a sexually violent predator. As I said, Section 6601(f)—excuse me, 6601(e) then requires further evaluations by independent evaluators. And both of those under 6601(f) have to conclude he's a sexually violent predator before the petition can even be filed.

"The Department of Mental Health didn't even refer it to two other independent evaluators."

The People did not then inform the court that they wanted additional time to comply by having the DMH refer the matter to two other independent evaluators. Thus, the superior court cannot be faulted for failing to grant a continuance that was never requested.

### III. Appropriateness of ordering further proceedings

█ Finally, in their traverse to the return, the People make two alternative additional arguments. First, they request we order the superior court to vacate its order dismissing the recommitment petition and proceed with a probable cause hearing based on four evaluations that were presented to the court on December 10, 1999. Alternatively, they request we order the superior court to proceed with a probable cause hearing on a new commitment petition that they allege was filed on September 5, 2000, and supported by six evaluations. There is no basis for granting either request.

The superior court permitted the People to argue a motion for reconsideration that apparently had four evaluations attached. However, the matter was rendered moot by our issuance of the stay requested by the People in their petition for writ of mandate. The superior court did nothing wrong that would require an order from this court directing it to vacate its order dismissing the December 1999 petition. As seen above, the court correctly ruled the petition failed to comply with the statute.

Whether the People may file a motion at this late date to amend the December 1999 petition to include the new evaluations is not clear. At best, it would be a discretionary decision on the part of the superior court. However, there is no basis for this court to order the superior court to take any further action at this time.

With respect to whether the People can proceed on a new petition alleged to have been filed in September 2000, we conclude the matter is not ripe for consideration. We believe the superior court must have the first crack at whether it can and should proceed on the new petition.[2] There certainly is no basis for ordering the superior court to consider and proceed with a probable cause hearing.

---

[2]We note the People have provided no statutory authority to permit such a filing after the original two-year commitment has expired. The People cite to *People v. Superior Court (Butler)* (2000) 83 Cal.App.4th 951 [100 Cal.Rptr.2d 199] (*Butler III*), to support their position that we may order the superior court to consider the new petition. However, at the time of this writing, *Butler III* is not final, and in any event is procedurally and factually distinguishable. We are not persuaded any further action on our part is warranted at this time.

## DISPOSITION

The order to show cause is discharged and the petition for writ of mandate or other appropriate relief is denied. The order staying the dismissal order is vacated upon finality of this decision.

Dibiaso, Acting P. J., and Harris, J., concurred.