[No. A105272. First Dist., Div. Four. Aug. 19, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
LUTHER EVANS, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.A.

**COUNSEL**

L. Richard Braucher, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Rene A. Chacon and Moona Nandi, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**REARDON, J.**—A jury found appellant Luther Evans to be a sexually violent predator (SVP). (Welf. & Inst. Code, § 6600.) He was committed to a state hospital for two years. Evans appeals the commitment, contending that (1) the trial court committed instructional error, and (2) his case was not timely prosecuted. We affirm the judgment.

## I. FACTS

### A. *Criminal History*

Evans has a long criminal history, dating back more than 30 years. In 1973, he was found loitering inside a woman's apartment and he battered another woman in that year. In 1975, he committed burglary of a woman's apartment and in 1976, forcible rape of another woman for which he was convicted. Evans was convicted of assault to commit rape on yet another woman in 1976. In 1980, he again committed and was convicted of forcible rape and was arrested for a second forcible rape. In 1991, he committed assault and sexual battery during an attempted rape. During those years, Evans was in and out of prison. Evans verbally threatened his victims and administered beatings after the sexual assault. He tried to strangle one victim and held a knife to another.

### B. *Civil Commitment*

In January 1998, the San Francisco District Attorney filed a petition for Evans's involuntary commitment as an SVP. (See Welf. & Inst. Code, § 6600.) In 1999, a jury was unable to reach a verdict on the petition. In March 2003, Evans moved to dismiss the petition without success. (See Code Civ. Proc., § 583.310 et seq.) A second jury trial on the petition was conducted in October 2003, resulting in the current commitment.

### C. *State Experts*

Dr. Douglas Korpi is a clinical psychologist qualified as an expert in the area of diagnosing mental disorders, the risk assessment of sex offenders and evaluations under the Sexually Violent Predator Act (Welf. & Inst. Code, § 6600 et seq.) (SVPA). Dr. Korpi interviewed Evans and evaluated the probation officers' reports along with the sworn testimonies of the arresting officers and victims.

Dr. Korpi diagnosed Evans as having paraphilia not otherwise specified (NOS) involving nonconsenting adults. Paraphilia NOS involves sexual fantasies, urges or behaviors directed toward nonconsenting persons over a period

of at least six months, which behavior upsets the person or causes serious disruption in his social and occupational functioning. Dr. Korpi concluded that Evans has paraphilia NOS because of his coercive sexual relationships with a number of people at a relatively young to a relatively old age. Dr. Korpi opined that given his "nascent guilt," Evans's paraphilia NOS was treatable in a sex offender treatment program.

Moreover, Dr. Korpi diagnosed Evans as having antisocial personality disorder. Antisocial personality disorder involves a person beginning to get in trouble before the age of 15 and continuing to engage in lawless, irresponsible, impulsive behavior without regard for self or others and without remorse for victims. Dr. Korpi supported his antisocial disorder diagnosis by citing to Evans's history of deceitfulness, problems with planning ahead, aggression, inability to develop a career or a family life and his lack of remorsefulness.

Dr. Korpi considered Evans's future dangerousness and found that his denials of participating in sexual offenses were significant because a person has to be able to discuss the crimes in order to be treated. Evans accused his victims of lying and asserted that he is the victim. Dr. Korpi concluded that there is a serious and well-founded risk that Evans will in the future reoffend in a sexually violent and predatory manner. Dr. Korpi concluded that Evans was in the highest risk category to reoffend. Evans has a 39 percent chance of reoffending after five years and the percentages increase every year. Dr. Korpi noted that Evans had a few things in his favor, such as his advanced age—53 years old at the time of trial, and a supportive family. Dr. Korpi concluded Evans meets the statutory requirements for involuntary commitment as an SVP.

Dr. John Hupka, another psychologist, qualified as an expert in the area of diagnosing mental disorders, the risk assessment of sex offenders, and evaluations under the SVPA. He similarly diagnosed Evans with paraphilia NOS and antisocial disorder. Dr. Hupka also concluded that Evans meets the statutory standard of being an SVP. He reviewed documents and reports and spoke with Evans. Dr. Hupka concurred that Evans would most likely reoffend, based on the Static-99 test that he administered. Evans received a high score of 8.

Dr. Hupka noted that Evans's antisocial disorder is a life-long chronic condition that involves a history of behavior that violates societal norms and the rights of others. Evans's condition impairs his emotions, impulse control, perceptions of himself and his interpersonal relationships. Dr. Hupka also added that Evans's paraphilia NOS goes into remission when he is in prison because he lacks opportunity. Evans has a history of recommitting rape

offenses within days, weeks or at the most, months after his release from prison and Dr. Hupka expected further reoffenses in the future.

### D. *Defense*

Dr. Raymond Anderson, a clinical psychologist, evaluated Evans. In his opinion, Evans did not suffer from paraphilia NOS. After reviewing the offenses, Dr. Anderson concluded that they evidenced opportunistic crime motivation rather than a paraphilia rape disorder. Dr. Anderson was of the opinion that Evans's rape offenses were an extension of stealing and not paraphilia NOS. Dr. Anderson concluded the object of the rapes appear to be for the purpose of obtaining sexual satisfaction, rather than for the purpose of carrying out a dream or fantasy.

Dr. Anderson disagreed with the state evaluators' diagnosis of antisocial personality disorder. The disorder begins with attention deficit disorder, which parents do not handle correctly, and leads to an oppositional disorder evolving into antisocial personality disorder. Dr. Anderson saw no evidence of this phenomenon citing Evans's good relationship with his parents. Evans also did well for periods of his life working, studying and participating in vocational programs in prison.

Dr. Anderson opined that Evans does not have a mental disorder and that he is capable of controlling himself. Even if Evans had a mental disorder, Dr. Anderson opined that the Static-99 test is an insufficient method of predicting whether or not Evans would reoffend. Dr. Anderson did his own calculation of the Static-99 test, concluding that Evans's risk of reoffending was very low, less then 10 percent.

Dr. John Podboy, a clinical psychologist, also evaluated Evans and concurred that he did not suffer from paraphilia NOS. Dr. Podboy also investigated Evans's behavior at the San Francisco jail and concluded that he was compliant and not a difficult person around the female correctional staff, a behavior that is inconsistent with the paraphilia NOS diagnosis. Dr. Podboy's testing revealed that Evans is a needy person, but that his anxiety problem should not have a bearing on any likelihood of reoffending. He opined that Evans's likelihood of reoffending within 10 years was "highly improbable" based on his advanced age, lack of evidence of sexual psychopathy, absence of acting out sexually while in custody, and the lack of evidence that he has any inability to control his behavior in general. Dr. Podboy made this assessment despite not using an actuarial instrument test such as the Static-99 test because he believes those tests lack scientific merit.

Evans testified on his own behalf. At the time of the trial, he was 53 years old and had been in prison for six years. He had a large family which he

could count on for support in the event he were to be released. He had studied Islam for 12 years and had the support of his imam and his religious community outside of prison. He had been steadily employed and had two significant long-term relationships with women in the early 1970's. Evans denied involvement in the various offenses of which he was convicted. He told the jury that he does not hate women, does not fantasize about rape and intends to live a nonviolent life.

On October 27, 2003, the jury determined Evans to be an SVP. The court committed him to a state hospital for two years.

## II.  DISCUSSION

### A.  *Jury Instructions**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### B.  *Dismissal*

Evans also claims that the trial court should have applied the mandatory dismissal provisions set forth in the Code of Civil Procedure. He contends that the statutes are not inconsistent with the SVPA. Evans also maintains that although SVP cases are special proceedings, they are not as the trial court found so "unusual" that they "stand outside the general framework of civil or criminal law."

In the case at hand, Evans moved to dismiss asserting that the petition had not been timely prosecuted under Code of Civil Procedure section 583.310 et seq. According to Evans, the SVP petition must be dismissed because five years had elapsed since the time of its filing.

Code of Civil Procedure section 583.310 provides that a trial must commence within five years once an action has been filed. Under Code of Civil Procedure section 583.320, if a new trial is granted because of a reversal or a mistrial, the trial should commence within three years of the reversal or mistrial. Further, if the trial is not commenced within the time period prescribed, the action shall be dismissed on motion of the court or the defendant. (See Code Civ. Proc., § 583.360.) An action may be tolled if bringing it to trial was "impossible, impracticable or futile." (Code Civ. Proc., § 583.340, subd. (c).) The critical factor of whether impossibility, impracticability or futility of bringing a case to trial extends the statute of limitation is whether the plaintiff exercised reasonable diligence in prosecuting the case.

---

*See footnote, *ante,* page 950.

(See Code Civ. Proc., § 583.340, subd. (c); *Brown & Bryant, Inc. v. Hartford Accident & Indemnity Co.* (1994) 24 Cal.App.4th 247, 251 [29 Cal.Rptr.2d 144].)

■ Evans cannot benefit from section 583.310 et seq. of the Code of Civil Procedure. These statutes are located in part 2 of the Code of Civil Procedure entitled Civil Action. Part 2 of the Code of Civil Procedure generally does not extend to special proceedings unless the statutes establishing such proceedings expressly incorporate the provisions of part 2. (*Agricultural Labor Relations Bd. v. Tex-Cal Land Management, Inc.* (1987) 43 Cal.3d 696, 707 [238 Cal.Rptr. 780, 739 P.2d 140]; *Litmon v. Superior Court* (2004) 123 Cal.App.4th 1156, 1173 [21 Cal.Rptr.3d 21].) SVP civil commitment proceedings are special proceedings, not actions. (*Ibid.*) The SVPA does not incorporate provisions of part 2 of the Code of Civil Procedure and therefore they do not apply.

■ Moreover, Code of Civil Procedure section 583.120, subdivision (a) states that the mandatory dismissal statutes do "not apply to a special proceeding except to the extent incorporated by reference in the special proceeding." Again, the SVPA does not incorporate the mandatory dismissal provision, let alone part 2 of the Code of Civil Procedure. Evans argues nonetheless that section 583.120 gives the court *discretion* to apply the dismissal statutes to special proceedings such as SVP proceedings because such application is not inconsistent with the character of the proceeding. He cites section 583.120, subdivision (b), which states that the court may apply the mandatory dismissal provisions to a special proceeding, "except to the extent such application would be inconsistent with the character of the special proceeding or the statute governing the special proceeding."

We conclude that even if part 2 of the Code of Civil Procedure applied to SVP proceedings, application of the mandatory dismissal statutes would be inconsistent with the character of SVP proceedings. First, the dismissal of an SVP petition would affect public safety at large. Second, although the SVPA has few time limits, reviewing courts "have implied that the only act that could divest the court of subject matter jurisdiction and trigger a dismissal is the People's failure to file a petition for recommitment before the prior commitment expires." (*Litmon v. Superior Court, supra,* 123 Cal.App.4th at p. 1171.) Third, that there is no statutory provision permitting dismissal of an SVP petition for failure to prosecute is of no consequence. The trial court has inherent authority and authority under section 187[2] of the Code of Civil

---

[2] "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code." (Code Civ. Proc., § 187.)

Procedure to ensure the orderly administration of justice, including the authority to dismiss an SVP petition for unreasonable prosecutorial delay. Fourth, even if discretion were to be exercised under Code of Civil Procedure section 583.120, subdivision (b), the court did not abuse its discretion here because some continuances were a product of multiple changes in attorneys and others were court-ordered because of court congestion.

## III.  DISPOSITION

The judgment is affirmed.

Kay, P. J., and Rivera, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 21, 2005.