[No. H033845. Sixth Dist. Nov. 16, 2009.]

WILLIAM LANGHORNE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

[No. H033846. Sixth Dist. Nov. 16, 2009.]

ERNEST VASQUEZ, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

[No. H033847. Sixth Dist. Nov. 16, 2009.]

MIKE SANCHEZ, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

[No. H033848. Sixth Dist. Nov. 16, 2009.]

ARTHUR ROBLEDO, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

226

COUNSEL

Mary J. Greenwood, Public Defender, Michael S. Ogul and Matthew M. Wilson, Deputy Public Defenders, for Petitioners.

No appearance for Respondent.

Edmund G. Brown, Jr., Attorney General, and Bridget Billeter, Deputy Attorney General, for Real Party in Interest.

OPINION

BAMATTRE-MANOUKIAN, Acting P. J.—

## I. INTRODUCTION

Petitioners William Langhorne, Ernest Vasquez, Mike Sanchez, and Arthur Robledo (hereafter collectively petitioners) have been subjected to involuntary two-year commitments under the Sexually Violent Predator Act (SVPA) (Welf. & Inst. Code, § 6600 et seq.).[1] In 2006, the SVPA was amended to

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

provide that a sexually violent predator's term of commitment is indeterminate, rather than two years. (§§ 6604, 6604.1, subd. (a); *People v. Whaley* (2008) 160 Cal.App.4th 779, 785–787 [73 Cal.Rptr.3d 133] (*Whaley*).) In 2007, during the petitioners' most recent two-year commitment terms, the People filed motions to convert each petitioner's commitment term to an indeterminate term. The trial court granted the motions.

In 2008, this court ruled in *Whaley* that a motion to convert a two-year commitment term to an indeterminate term is improper, because a person already committed as a sexually violent predator before the 2006 amendments to the SVPA is entitled to an extension hearing at which there will be a new determination of whether the person is a sexually violent predator. (*Whaley, supra*, 160 Cal.App.4th at p. 803.) In response to *Whaley*, the People filed petitions to extend the commitments for an indeterminate term (sometimes hereafter, the recommitment petitions). Petitioners then filed motions to dismiss the recommitment petitions on the ground that their previous commitments had expired before the recommitment petitions were filed and the trial court therefore lacked jurisdiction to proceed. The trial court denied the motions to dismiss after finding that the district attorney had made a good faith mistake of law that allowed the court to retain jurisdiction pursuant to the good faith exception provided by section 6601, subdivision (a)(2) (hereafter, section 6601(a)(2)).

Petitioners challenged the trial court's order denying their motions to dismiss the recommitment petitions by filing petitions for writs of mandate and/or prohibition in this court. For the reasons stated below, we find that the trial court did not err in denying the motions to dismiss and therefore we will deny the petitions for writs of mandate and/or prohibition.

## II. BACKGROUND

A brief summary of the procedural background of each original proceeding[2] follows.

### A. Langhorne v. Superior Court *(H033845)*

In 1986, Langhorne was convicted of 10 counts of lewd and lascivious conduct upon a child under 14 years of age (Pen. Code, § 288, subd. (a)), four counts of oral copulation with another person under 16 years of age (Pen.

---

[2] We take judicial notice of this court's prior opinions in *People v. Sanchez* (July 10, 2008, H031856) (nonpub. opn.), *People v. Vasquez* (July 10, 2008, H031864) (nonpub. opn.), *People v. Robledo* (Aug. 8, 2008, H031879) (nonpub. opn.), and *People v. Langhorne* (Aug. 14, 2008, H031887) (nonpub. opn.). Our summary of the pertinent procedural background in each original proceeding includes some information that we have taken from our prior opinions.

Code, § 288a, subd. (b)(2)), and two counts of oral copulation with another person under 18 years of age (Pen. Code, § 288a, subd. (b)(1)). (*People v. Langhorne, supra*, H031887.)

Langhorne was initially committed as a sexually violent predator in 1997. He was thereafter recommitted for additional two-year terms, with the most recent two-year term extending to November 14, 2007.

On June 8, 2007, before the expiration of the most recent two-year commitment period, the People filed a "motion to retroactively apply an indeterminate term to respondent" under the 2006 amendments to the SVPA. (§§ 6604, 6604.1, subd. (a).) The trial court granted the motion on July 27, 2007, and ordered Langhorne to be committed to the custody of the State Department of Mental Health for an indeterminate term as a sexually violent predator. Langhorne appealed, and this court reversed the order imposing an indeterminate term of commitment in an opinion filed on August 14, 2008. (*People v. Langhorne, supra*, H031887.)

### B.   Vasquez v. Superior Court *(H033846)*

Vasquez was convicted of unlawful intercourse with a minor in 1973, assault with intent to commit rape in 1982, and lewd conduct with a child in 1993. In 2001, Vasquez was committed as a sexually violent predator and subsequently recommitted, with the most recent two-year term of commitment extending to December 18, 2007. (*People v. Vasquez, supra*, H031864.)

On June 8, 2007, before the expiration of the most recent two-year commitment period, the People filed a "motion to retroactively apply an indeterminate term to respondent" under the 2006 amendments to the SVPA. The trial court granted the motion on July 19, 2007, and ordered that Vasquez be committed to the custody of the State Department of Mental Health for an indeterminate term. Vasquez appealed, and this court reversed the order imposing an indeterminate term of commitment in an opinion filed on July 10, 2008. (*People v. Vasquez, supra*, H031864.)

### C.   Sanchez v. Superior Court *(H033847)*

Sanchez was convicted of one count of lewd act on a child in both 1979 and 1982. He was initially committed as a sexually violent predator in 2000.

Thereafter, Sanchez was recommitted for additional two-year terms, with the most recent two-year commitment term extending to January 19, 2008. (*People v. Sanchez, supra*, H031856.)

On June 8, 2007, before the expiration of the most recent two-year commitment period, the People filed a "motion to retroactively apply an indeterminate term to respondent" under the 2006 amendments to the SVPA. The trial court granted the motion on July 19, 2007, and ordered that Sanchez be committed to the custody of the State Department of Mental Health for an indeterminate term. Sanchez appealed, and this court reversed the order imposing an indeterminate term of commitment in an opinion filed on July 10, 2008. (*People v. Sanchez, supra*, H031856.)

D. Robledo v. Superior Court *(H033848)*

In 1976, Robledo was convicted of two counts of violating Penal Code section 288a, subdivisions (b)(2) and (c), and one count of violating Penal Code section 286, subdivision (b). In 1988, Robledo was convicted of three counts of violating Penal Code section 288, subdivision (a). (*People v. Robledo, supra*, H031879.)

Robledo was initially committed as a sexually violent predator in 2001. He was thereafter recommitted for additional two-year terms, with the most recent two-year commitment term extending to November 9, 2007.

On June 28, 2007, before the expiration of the most recent two-year commitment period, the People filed a "motion to retroactively apply an indeterminate term to respondent" under the 2006 amendments to the SVPA. The trial court granted the motion on July 26, 2007, and ordered that Robledo be committed to the custody of the State Department of Mental Health for an indeterminate term. Robledo appealed, and this court reversed the order imposing an indeterminate term of commitment in an opinion filed on August 8, 2008. (*People v. Robledo, supra*, H031879.)

E. *The 2008 Petitions to Extend Commitment*

On March 3, 2008, this court filed *Whaley, supra*, 160 Cal.App.4th 779, and held that "an indeterminate term of commitment imposed pursuant to section 6604.1 may not be imposed retroactively." (*Id.* at p. 784.) This court

explained that before an indeterminate term of commitment may be imposed, "a person already committed as a sexually violent predator before the amendments to sections 6604 and 6604.1 in 2006 is entitled to an extension proceeding at which there would be a new determination of the person's status as a sexually violent predator." (*Id.* at p. 803.) The remittitur in *Whaley* issued on June 20, 2008, after the California Supreme Court denied petitions for review.

On March 5, 2008, two days after *Whaley, supra,* 160 Cal.App.4th 779, was filed, the People requested updated evaluations from the State Department of Mental Health. Thereafter, between May 30 and June 6, 2008, while petitioners' appeals were pending, the People filed petitions to extend petitioners' commitments from the date each petitioner's prior two-year term expired to "the term prescribed by law."

Subsequently, as noted above, between July 10 and August 14, 2008, this court reversed the superior court orders that had retroactively committed petitioners to indeterminate terms of commitment.

F.  *The Motions to Dismiss the Recommitment Petitions*

On October 10, 2008, each petitioner filed a motion in superior court to dismiss the pending petition to extend his commitment. Petitioners argued that the orders committing them to indeterminate terms had been reversed by the Court of Appeal. Petitioners also pointed out that the pending petitions to extend their commitments had been filed after their "last lawful" two-year commitment terms had expired. According to petitioners, the superior court as a consequence did not have jurisdiction to proceed on the petitions to extend their commitment. Petitioners sought immediate release.

The People filed written responses, arguing that the superior court could proceed on the petitions to extend petitioners' commitments. Relying on section 6601(a)(2),[3] the People contended that the court was authorized "to entertain petitions for commitment ordinarily barred for lack of jurisdiction

---

[3] Section 6601(a)(2) provides, "A petition may be filed under this section if the individual was in custody pursuant to his or her determinate prison term, parole revocation term, or a hold placed pursuant to Section 6601.3, at the time the petition is filed. *A petition shall not be dismissed on the basis of a later judicial or administrative determination that the individual's custody was unlawful, if the unlawful custody was the result of a good faith mistake of fact or law.* This paragraph shall apply to any petition filed on or after January 1, 1996." (Italics added.)

when there has been a good faith mistake in law or fact." In their view, the People held a "good faith belief that [each petitioner] was serving a lawful indeterminate term and therefore did not file or make an inquiry to [the State Department of Mental Health] about filing a new petition. It was not until the appellate court ruling on the identical issue in *Whaley* was published could the reliance on [each petitioner's] custodial status be interpreted as a mistake. It was a good faith mistake of law or fact."

The People further argued that as soon as they became aware of *Whaley*, they asked the State Department of Mental Health "to generate evaluations on all individuals subject to the retroactive indeterminate term so that petitions could be filed on the cases where the evaluators agreed [the petitioner] was [a sexually violent predator] . . . . This request was made despite the fact that a Petition for Review had not been filed and a [remittitur] had not issued in the *Whaley* case, nor had an opinion been expressed by the appellate court in [petitioner's] case." The People also argued that in view of their "good faith mistake" and "[t]he compelling state interest in keeping the community safe from sexual predators," the petitions to extend petitioners' commitments should not be dismissed.

In reply, petitioners contended that the People had not made a good faith mistake because they "knew, or should have known, that reversal was likely" with respect to the superior court's orders retroactively committing petitioners to indeterminate terms, and therefore the People should have filed recommitment petitions before petitioners' then existing two-year terms expired. Petitioners also contended that there appeared to be a delay between the date that the People were notified by the State Department of Mental Health that petitioners should be recommitted and the date that the People filed the petitions to extend petitioners' commitments, which suggested that the late filing of those petitions was not the result of a good faith mistake.

G.  *The Trial Court's Order*

On December 10, 2008, the superior court heard argument from counsel regarding all four petitioners' motions to dismiss the pending petitions to extend their commitments. The court denied the motions, explaining: "I do think that there was a good faith mistake by the People in the fact or law, and the People made every effort they could to recognize and respect each of the gentlemen's due process rights. There is nothing about that delay between

March 3rd [when *Whaley* was filed] and May 30th [when some of the petitions to extend commitment were filed] that tells me that all they did was unreasonable or inappropriate . . . ."

### H. *Writ Proceedings*

On February 9, 2009, petitioners filed in this court petitions for writs of mandate and/or prohibition directing the superior court to vacate its orders denying their motions to dismiss the People's petitions to extend their commitments. Because the writ petitions raise the same issue regarding the application of the good faith exception set forth in section 6601(a)(2), we ordered that these original proceedings be considered together for purposes of an order to show cause, briefing, oral argument,[4] and decision.

## III.  DISCUSSION

Petitioners contend that writ relief should be granted because the trial court erred in denying their motions to dismiss the petitions to extend their commitments. They reiterate their argument below that the good faith exception of section 6601(a)(2) does not apply here because the People did not make a good faith mistake of law when they failed to timely file the recommitment petitions before the expiration of petitioners' most recent two-year commitment periods. The availability of writ review is our first consideration.

### A. *Availability of Writ Review*

Writ review of an interim order, such as denial of a motion to dismiss, is rarely granted because an interim order is reviewable on appeal from the final judgment. However, writ review is appropriate to address "questions of first impression that are of general importance to the trial courts and to the [legal] profession, and where general guidelines can be laid down for future cases." (*Oceanside Union School Dist. v. Superior Court* (1962) 58 Cal.2d 180, 185–186, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439]; see *Litmon v. Superior Court* (2004) 123 Cal.App.4th 1156, 1166 [21 Cal.Rptr.3d 21].) In the present case, we granted writ review because we believe that the issue raised by petitioners regarding the application of the section 6601(a)(2) good faith exception to allow the trial court to retain jurisdiction over an untimely petition to extend commitment is an issue of general importance to the public and to the parties involved in SVPA proceedings, and therefore writ review is warranted to resolve the issue and to provide guidance to the trial courts.

---

[4] The parties waived oral argument in these original proceedings.

### B. *The Pertinent Changes to the SVPA*

We will begin our analysis of petitioners' contentions with an overview of the pertinent changes to the SVPA. Prior to 2006, an individual committed under the SVPA was subject to a two-year term of commitment. (*Whaley, supra*, 160 Cal.App.4th at p. 785.) Any subsequent extension of commitment was also for two years. (*Id.* at pp. 785–786.) In 2006, the SVPA was amended to provide that a sexually violent predator's term of commitment is indeterminate, rather than two years. (§§ 6604, 6604.1, subd. (a); *Whaley, supra*, 160 Cal.App.4th at pp. 786–787.)

The amended SVPA also provides in section 6604.1, subdivision (a) that the indeterminate term of commitment begins on the date the court issues the "initial" order of commitment. In *Whaley*, this court construed "the reference to an 'initial' order in section 6604.1, subdivision (a), as reflecting *when* the commitment term begins for a person *first* committed to an *indeterminate* term, rather than demonstrating intent by the voters to retroactively apply an indeterminate term to those already committed." (*Whaley, supra*, 160 Cal.App.4th at p. 798.)

Having determined that the amendments to sections 6604 and 6604.1, subdivision (a) providing for an indeterminate term of commitment are to be applied prospectively, this court further held that "a person already committed as a sexually violent predator before the amendments to sections 6604 and 6604.1 in 2006 is entitled to an extension proceeding at which there would be a new determination of the person's status as a sexually violent predator." (*Whaley, supra*, 160 Cal.App.4th at p. 803.) Thus, to obtain an indeterminate term of commitment for a person subject to a prior two-year commitment under the SVPA, the People are required to file a petition to extend commitment and to independently prove that the person has " 'a *currently* diagnosed mental disorder which makes it likely the person will engage in sexually violent criminal behavior.' [Citation.]" (160 Cal.App.4th at pp. 798, 804.)

### C. *Good Faith Mistake Under Section 6601, Subdivision (a)(1)*

The SVPA requires that a person be in custody when the initial commitment petition is filed. (§ 6601, subd. (a)(1), (2); *People v. Badura* (2002) 95 Cal.App.4th 1218, 1224 [116 Cal.Rptr.2d 336] (*Badura*).) In pertinent part, section 6601(a)(2) provides: "A petition may be filed under this section if the individual was in custody pursuant to his or her determinate prison term, parole revocation term, or a hold placed pursuant to Section 6601.3, at the time the petition is filed."

This court has previously determined that the Legislature intended that the procedures for obtaining a subsequent extended commitment be the same as

the procedures for obtaining an initial commitment. (*Butler v. Superior Court* (2000) 78 Cal.App.4th 1171, 1179–1180 [93 Cal.Rptr.2d 468]; cf. *Badura, supra*, 95 Cal.App.4th at p. 1223 [procedures for an initial commitment apply to an extended commitment to the extent possible].) Accordingly, it has been held that the SVPA "equally requires that the defendant be in custody, pursuant to the prior commitment, when an extended commitment petition is filed." (*Badura, supra*, 95 Cal.App.4th at p. 1224.)

■ An express good faith exception to the custody requirement is provided by section 6601(a)(2), which states in pertinent part, "A petition shall not be dismissed on the basis of a later judicial or administrative determination that the individual's custody was unlawful, if the unlawful custody was the result of a good faith mistake of fact or law. This paragraph shall apply to any petition filed on or after January 1, 1996."

The good faith exception of section 6601(a)(2) was added to the SVPA in 1999 with the intent to adopt a rule similar to the holding in *People v. Superior Court (Whitley)* (1999) 68 Cal.App.4th 1383 [81 Cal.Rptr.2d 189] (*Whitley*). (*In re Smith* (2008) 42 Cal.4th 1251, 1260 [73 Cal.Rptr.3d 469, 178 P.3d 446] (*Smith*).) In *Whitley*, the appellate court determined that the trial court had jurisdiction to consider a petition to commit Whitley under the SVPA, although his parole had been erroneously revoked at the time the petition was filed, because the error was due to a mistake of law and there was no indication of negligent or intentional wrongdoing by the Department of Corrections. (*Whitley, supra*, 68 Cal.App.4th at pp. 1389–1390.)

As noted in *Smith*, the legislative history of section 6601(a)(2) further shows that the Legislature intended to ensure " 'that petitions to commit dangerous sex offenders to mental health facilities after their terms have expired cannot be dismissed simply because a judge found a prisoner's term was mistakenly extended.' " (*Smith, supra*, 42 Cal.4th at p. 1261; see *People v. Hubbart* (2001) 88 Cal.App.4th 1202, 1228 [106 Cal.Rptr.2d 490].) Therefore, under the good faith exception of 6601(a)(2), proceedings under the SVPA may be brought "against those whose initial prison custody was valid, but who might evade SVP commitment due to erroneous parole revocations or extensions of sentence . . . ." (*Smith, supra*, 42 Cal.4th at p. 1269.)

The good faith exception of section 6601(a)(2) also applies in recommitment proceedings. In *Badura, supra*, 95 Cal.App.4th at page 1224, the appellate court interpreted section 6601(a)(2) to imply that a petition for an initial commitment "*should* be dismissed if the unlawful custody was *not* the result of a good faith mistake," and concluded that "this requirement also applies to an extended commitment petition." (*Badura*, at p. 1224.) Because an individual's unlawful custody status may be the result of a good faith

mistake of fact or law, it has been held that pursuant to section 6601(a)(2) "[a]n individual is not automatically entitled to release upon the expiration of a term of commitment [under the SVPA], even if a timely petition to extend the commitment is not filed. [Citations.]" (*People v. Taylor* (2009) 174 Cal.App.4th 920, 934 [94 Cal.Rptr.3d 756].)

### D. *Application of Section 6601(a)(2) to the Instant Proceedings*

In the present cases, it is undisputed that petitioners were held in unlawful custody after the expiration of their most recent two-year commitment terms, for two reasons: (1) the trial court's orders automatically extending their most recent two-year commitments for an indeterminate term were reversed by this court; and (2) the People filed untimely recommitment petitions after the most recent two-year commitment terms had expired. Thus, the issue here is whether the trial court has jurisdiction to proceed on the People's untimely petitions for recommitment despite petitioners' unlawful custody status, pursuant to the good faith exception of section 6601(a)(2).

■  Our resolution of the issue begins with the observation that the SVPA has few statutory time limits. (*People v. Superior Court (Ramirez)* (1999) 70 Cal.App.4th 1384, 1389 [83 Cal.Rptr.2d 402].) "Given the absence of statutory time limits, the Courts of Appeal have implied that the only act that could divest the court of subject matter jurisdiction and trigger a dismissal is the People's failure to file a petition for recommitment before the prior commitment expires." (*Litmon v. Superior Court, supra*, 123 Cal.App.4th at p. 1174; see *People v. Evans* (2005) 132 Cal.App.4th 950, 956 [34 Cal.Rptr.3d 35].) This court similarly stated in *Whaley* that "[i]n general, the only act that may deprive a court of jurisdiction is the People's failure to file a petition for recommitment before the expiration of the prior commitment." (*Whaley, supra*, 160 Cal.App.4th at p. 804.) Thus, a trial court lacks jurisdiction to consider an untimely recommitment petition unless the good faith exception of section 6601(a)(2) applies. (*Badura, supra*, 95 Cal.App.4th at p. 1224.)

Petitioners contend that the good faith exception of section 6601(a)(2) does not apply in their cases because a good faith mistake of law did not cause the People to fail to file the recommitment petitions before the expiration of petitioners' most recent two-year commitment periods. According to petitioners, the People's decision to file motions to automatically convert their most recent two-year commitment terms to indeterminate terms, rather than to file timely recommitment petitions, constituted "such a novel and unprecedented expansion of the State's civil commitment authority" that it cannot be deemed a good faith mistake of law. Similarly, petitioners assert that the People knew, or should have known, that reversal of the orders granting their motions was likely.

Petitioners additionally argue that the People's lack of good faith was demonstrated by their delay, after *Whaley* was published on March 3, 2008, in failing to file the petitions for recommitment until several months later, between May 30 and June 6, 2008. While petitioners acknowledge that the People requested updated evaluations from the State Department of Mental Health only two days after *Whaley* was filed, on March 5, 2008, they claim that the evaluation requests are irrelevant to the question of good faith because the petitions could have been filed at an earlier date without the evaluations, subject to later submission of the evaluations as suggested by *People v. Superior Court (Preciado)* (2001) 87 Cal.App.4th 1122 [105 Cal.Rptr.2d 159].

The People, on the other hand, maintain that they failed to timely file the recommitment petitions due to a good faith mistake of law. They explain that "[a]t the time of the automatic conversion [to an indeterminate term], the amended statute was not explicit, and there was no case directly on point." Further, the People note that petitioners have not provided any "objective facts" to show that the district attorney "did not truly believe in the correctness" of this legal position that automatic conversion to an indeterminate term was proper under the 2006 amendments to the SVPA. To the contrary, the People argue, good faith was demonstrated by the fact that they requested evaluations from the State Department of Mental Health as soon as their legal position was rejected in *Whaley*, instead of waiting until the trial court's orders granting their motions for automatic conversion to an indeterminate term were reversed on appeal. The People also note that decisions construing other statutory schemes for civil commitment have held that untimely petitions to extend commitment do not deprive the trial court of jurisdiction where there was good cause for the delay (*People v. Minahen* (1986) 179 Cal.App.3d 180, 189 [224 Cal.Rptr. 460] [not guilty by reason of insanity, Pen. Code, § 1026.5]) or a mistake of law where the relevant statute was not explicit (*People v. Dias* (1985) 170 Cal.App.3d 756, 763 [216 Cal.Rptr. 295] [mentally disordered sex offender, former § 6316.1]).

■ The trial court denied petitioners' motions to dismiss after finding that the People's failure to file timely recommitment petitions was due to a good faith mistake of law. We review the trial court's finding of good faith under the substantial evidence standard of review. (*People v. Memro* (1995) 11 Cal.4th 786, 831 [47 Cal.Rptr.2d 219, 905 P.2d 1305]; *Knight v. City of Capitola* (1992) 4 Cal.App.4th 918, 932 [6 Cal.Rptr.2d 874].) As this court has observed in another context, "*Good faith*, or its absence, involves a factual inquiry into the plaintiff's subjective state of mind [citations]: Did he or she believe the action was valid? What was his or her intent or purpose in pursuing it? A subjective state of mind will rarely be susceptible of direct proof; usually the trial court will be required to infer it from circumstantial evidence. Because the good faith issue is factual, the question on appeal will

be whether the evidence of record was sufficient to sustain the trial court's finding." (*Knight v. City of Capitola, supra*, 4 Cal.App.4th at p. 932.)

The phrase "good faith" is generally understood "to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation. [Citations.]" (*People v. Nunn* (1956) 46 Cal.2d 460, 468 [296 P.2d 813].) In other words, good faith is " 'a state of mind indicating honesty and lawfulness of purpose: belief in one's legal title or right: belief that one's conduct is not unconscionable . . . .' [Citation.]" (*Pugh v. See's Candies* (1988) 203 Cal.App.3d 743, 764 [250 Cal.Rptr. 195].) The existence of good faith is determined by the circumstances existing at the time of the alleged good faith act, and " 'not by virtue of hindsight.' " (*Burch v. Children's Hospital of Orange County Thrift Stores, Inc.* (2003) 109 Cal.App.4th 537, 548 [135 Cal.Rptr.2d 404] [evaluating a good faith offer under Code Civ. Proc., § 998].)

Having carefully reviewed the record in each of the original proceedings, we are convinced for several reasons that substantial evidence supports the trial court's finding that the People made a good faith mistake of law when they brought the motions to automatically convert petitioners' most recent two-year commitment terms to indeterminate terms, which resulted in petitioners' unlawful custody. First, the trial court granted the People's motion in each petitioner's case, which indicates that the trial court found the People's legal position to be not only legally tenable, but meritorious. For example, in Langhorne's case, the People argued in their June 8, 2007 motion to convert his two-year commitment term to an indeterminate term that his commitment was " 'now indeterminate by operation of law' " because the 2006 amendments to sections 6604 and 6604.1 applied retroactively in accordance with the statutory language. (*People v. Langhorne, supra*, H031887.) The trial court agreed and ordered Langhorne to be committed for an indeterminate term. (*Ibid.*)

Second, at the time the People filed their motions to automatically convert petitioners' two-year commitment terms to indeterminate terms, no published decision had construed the 2006 amendments to sections 6604 and 6604.1, which mandated that a person determined to be a sexually violent predator be committed for an indeterminate term commencing "on the date upon which the court issues the initial order of commitment pursuant to [section 6604]." The People contended that "the use of the term 'initial' in section 6604.1 discloses an intent to make, and 'by definition' makes, the indeterminate term retroactive." (See, e.g., *People v. Langhorne, supra*, H031887.) The first published decision to reject the People's contention that the indeterminate term applied retroactively was the Third District's decision in *Bourquez v.*

*Superior Court* (2007) 156 Cal.App.4th 1275 [68 Cal.Rptr.3d 142] (*Bourquez*). However, *Bourquez* was not filed until November 14, 2007, several months after the People's motions were filed in June 2007. Moreover, the California Supreme Court did not deny review of the *Bourquez* decision until February 27, 2008 (S159426).

Third, there was no appellate court decision from this court until we published *Whaley* on March 3, 2008. As we have discussed, *Whaley* rejected the People's legal position that the 2006 amendments to sections 6604 and 6604.1 should be applied retroactively, finding that there was no clear indication that retroactive application was intended. (*Whaley, supra,* 160 Cal.App.4th at p. 796.) In *Whaley*, this court carefully considered the People's retroactivity argument and did not find the argument to be frivolous or made in bad faith. Moreover, only two days after *Whaley* was published on March 3, 2008, the People on March 5, 2008, requested updated evaluations from the State Department of Mental Health to determine whether the persons whose two-year commitment terms had been automatically converted to indeterminate terms currently met the SVPA's criteria for a sexually violent predator. We find the People's almost immediate request for updated evaluations after their legal position was rejected in *Whaley* to be an indicator of good faith. Further, we agree with the trial court that there is nothing in the record to show that the passage of time between the March 5, 2008 date when the evaluations were requested and the filing of the recommitment petitions between May 30 and June 6, 2008, was an unreasonably long time for preparation and filing of the evaluations and the recommitment petitions. To the contrary, we believe that the fact that the People did not file recommitment petitions until they had received evaluations indicating that each petitioner currently met the statutory criteria for a sexually violent predator demonstrated the People's effort to faithfully comply with their obligations under the SVPA as instructed in *Whaley, supra,* 160 Cal.App.4th at pages 802–803.

The decision in *People v. Superior Court* (*Small*) (2008) 159 Cal.App.4th 301 [71 Cal.Rptr.3d 462] (*Small*), on which petitioners rely for the proposition that even a one-day delay in filing a commitment petition cannot be justified where the evaluations could have been requested much earlier, is distinguishable. In *Small*, the district attorney did not file a petition to commit Small as a sexually violent predator until one day after the 45-day parole hold period provided by section 6601.3 had expired. (*Small, supra,* 159 Cal.App.4th at p. 305.) The trial court found that Small's unlawful custody was not due to a good faith mistake of law or fact within the meaning of section 6601(a)(2), and the People did not challenge the trial court's finding on appeal. (159 Cal.App.4th at pp. 309–310.) The appellate court determined that the People had failed to explain either the initial delay in referring Small to the State Department of Mental Health for an evaluation or the subsequent

delay in obtaining the evaluation, rejecting the People's claim of an increased Department of Mental Health workload. (*Id.* at p. 310.)

Thus, in *Small*, the People implicitly conceded that the trial court had correctly found that the untimely commitment petition that caused Small to be held in unlawful custody after the expiration of the parole hold period was filed late due to the State Department of Mental Health's workload, rather than a mistake of law or fact. Here, in contrast, petitioners' unlawful custody was the result of the People's mistake of law in construing the 2006 amendments to sections 6604 and 6604.1 to apply retroactively and to allow automatic conversion of petitioners' two-year commitment terms to indeterminate terms, which resulted in the People's failure to file the recommitment petitions until this court in *Whaley* rejected the People's statutory interpretation.

■ For these reasons, we determine that substantial evidence supports the trial court's finding that the People made a good faith mistake of law when they failed to timely file the recommitment petitions before the expiration of petitioners' most recent two-year commitment periods. Because petitioners' unlawful custody was due to the People's mistake of law, the good faith exception of section 6601(a)(2) precludes dismissal of the untimely recommitment petitions. Therefore, the trial court properly denied petitioners' motions to dismiss the petitions to extend commitment and the court has jurisdiction to proceed on the petitions. Accordingly, we will deny the petitions for a writ of mandate and/or prohibition seeking reversal of the trial court's order of December 10, 2008, denying the motions to dismiss.

## IV. DISPOSITION

In *Langhorne v. Superior Court (People)*, H033845, the petition for a writ of mandate and/or prohibition is denied.

In *Vasquez v. Superior Court (People)*, H033846, the petition for a writ of mandate and/or prohibition is denied.

In *Sanchez v. Superior Court (People)*, H033847, the petition for a writ of mandate and/or prohibition is denied.

In *Robledo v. Superior Court* (*People*), H033848, the petition for a writ of mandate and/or prohibition is denied.

Mihara, J., and McAdams, J., concurred.

The petition of petitioner William Langhorne for review by the Supreme Court was denied February 18, 2010, S178938.