BENTON, J.
In this Jimmy Ryce Act case, Alton Hartzog urges as error the denial of his motion for a new trial. After a jury determined that he qualified as a “sexually violent predator” as that term is defined in sections 394.912(10) and 775.21(4)(d), Florida Statutes (2012), he was committed to continued confinement in the Florida Civil Commitment Center (FCCC) in Arcadia, Florida, pursuant to section 394.917(2), Florida Statutes (2012). He argues that the expert testimony adduced by the state — two psychologists testified against him — was legally insufficient to support an order finding a need for indefinite confinement because the psychologists relied sole *572 ly upon evaluations done in 2008, information which was too stale, as a matter of law. We reverse and remand for a new trial.
These proceedings began when, in May of 2008, the state attorney filed a petition in circuit court alleging that appellant was a “sexually violent predator.” The petition alleged that appellant had been interviewed on April 14, 2008, and evaluated by two psychologists, Drs. Falb and Kline. But appellant’s trial did not take place until January 29, 2013.[1] At the trial, both psychologists testified and both recommended commitment, basing their testimony on the interviews they had conducted and reports they had prepared in April of 2008. Neither expert had had any contact with appellant since then.
On appeal, as below,[2] appellant argues that the state failed to present clear and convincing evidence of two of the three elements it was burdened to prove, because the psychologists’ evaluations relied on were so old. Appellant’s motion for a new trial[3] preserved this sufficiency *573 of the evidence point. See Givans v. Ford Motor Credit Co., 82 So.3d 864, 865 (Fla. 4th DCA 2011) (“After the jury returned its verdict, Givans filed a motion for judgment notwithstanding the verdict or, in the alternative, motion for new trial, arguing, among other things, that the verdict was contrary to the manifest weight of the evidence because FMCC failed to establish that it asked Givans for payment. Givans’ post-trial motion preserved her challenge to the sufficiency of the evidence[.]”); Scarfone v. Magaldi, 522 So.2d 902, 903 (Fla. 3d DCA 1988) (“First, we conclude that the above issue has been properly preserved for appellate review. Although the plaintiff made no motion for a directed verdict below, he did file a motion for new trial in which he challenged the sufficiency of the evidence to support the jury’s verdict.”); Yoder v. Adriatico, 459 So.2d 449, 451 (Fla. 5th DCA 1984) (“In response the Yoders, while admitting that they filed no motion for directed verdict, contend that the question of the sufficiency of the evidence to support the verdict was preserved by their motion for new trial, relying upon Ruth v. Sorensen, 104 So.2d 10 (Fla.1958).”).
On motion for new trial on grounds the verdict is against the manifest weight of the evidence, the trial court must determine whether or not “a greater amount of credible evidence supports” the verdict. Geibel v. State, 817 So.2d 1042, 1044 (Fla. 2d DCA 2002). On appeal from an order granting or denying a motion for new trial based on manifest weight of the evidence, we review for abuse of discretion. See Brown v. Estate of Stuckey, 749 So.2d 490, 497-98 (Fla.1999). But appellant contends here primarily that the evidence was insufficient as a matter of law, because its obsolescence was incompatible with the Jimmy Ryce Act. On that premise, he argues persuasively, the proper standard of review is de novo. See Mistretta v. Mistretta, 31 So.3d 206, 208 (Fla. 1st DCA 2010) (recognizing “ ‘when a motion for new trial addresses only issues of law, the standard of review is essentially de novo ’”) (quoting State Farm Mut. Auto. Ins. Co. v. Williams, 943 So.2d 997, 999-1000 (Fla. 1st DCA 2006)).
In order to prove appellant was a sexually violent predator, the state was required to prove three elements by clear and convincing evidence: 1) that appellant had been convicted of a “sexually violent” offense, 2) that he suffers from a mental abnormality or personality disorder, and 3) that this makes him likely to engage in acts of sexual violence if not confined in a secure facility. See § 394.912(10), Fla. Stat. (2012). Appellant’s conviction for “promoting sexual performances by a child” by photographing two little girls (then 7 and 9 years old) in states of partial undress in sexually suggestive poses satisfied the first element, even though no violence was proven (or even suggested) as to either of the children.[4]
*574 But the state’s sole evidence that appellant currently suffers from a mental or personality disorder was the psychologists’ 2008 diagnosis, as documented in reports almost five years old, and their opinion that the diagnosis ought not to be changed in the absence of extensive treatment. The state offered no other evidence to prove factors two and three, ie., that appellant suffered from a mental abnormality or personality disorder in 2013, as opposed to five years earlier, much less that any such disorder makes it likely that he would commit a sexually violent offense.
Diagnoses almost five years old as the basis for a hold contested under section 394.917 do not comport with the legislative design of the Jimmy Ryce Act. Section 394.918(1) requires that a person who has been committed have a mental examination “once every year or more frequently at the court’s discretion.” A person who is ordered to be detained under the Jimmy Ryce Act may be entitled to a non-jury trial on the question of his release as often as once a year.[5] See § 394.918(2), Fla. Stat. (2013). These provisions make clear, albeit implicitly, that a five-year-old evaluation is a legally insufficient basis for confining a citizen who is not, after all, under criminal sentence. Mr. Hartzog had not even had a prior (initial) adjudication under the Jimmy Ryce Act. A person facing an initial deprivation of liberty should be afforded at least the same level of procedural protection as detainees already determined to be appropriate subjects of preventive detention.
Based on an interview in 2008, Dr. Kline diagnosed appellant with pedophilia and paraphilia. Both psychologists conceded Mr. Hartzog had undergone physiological changes since 2008 that they did not take into account in formulating the opinions they offered at trial.[6] Mr. Hartzog testified that, while at FCCC awaiting trial, he received therapy three to four times a week. Neither psychologist was aware of this therapy (which the state contended was not therapy for sexual disorders).
The other “tool” (in addition to the interview) used by Dr. Kline, he testified, was the “Static-99,” an actuarial program designed to measure the likelihood that adult male sex offenders will reoffend, by placing them on a scale from zero to twelve. Appellant scored a three in 2008, said to correlate with a “moderately low risk for reoffense.” But “Static-99” has since been updated to “Static-99R,” and Dr. Falb testified that, in his opinion, appellant would only score a one on the “Static-99R” to *575 day.[7] Dr. Kline also diagnosed appellant with pedophilia and scored appellant at three using the “Static-99” in 2008. In his opinion, however, rescoring appellant in 2018 on the “Static-99R” would result in a score of zero. A score of zero supposedly correlates with a 7.2 percent chance of reoffending in five years, and a 12.5 percent chance of reoffending in ten years. As a 78-year-old diabetic survivor of vascular surgery, Mr. Hartzog’s chances of living another five or ten years were not taken into account.
We have addressed the use of outdated mental health evaluations in other legal contexts. We said in Duncan v. State, 115 So.3d 1121, 1121 (Fla. 1st DCA 2013), for example, that “[n]ew mental health evaluations should be performed prior to the [competency] hearing as the ones at issue are now over a year old.” There we cited to In re Commitment of Reilly, 970 So.2d 453, 456 (Fla. 2d DCA 2007), in which the Second District held that a six-month-old report from a mental health expert was too stale to be relevant to an adjudication of incompetency. In In re Commitment of Drayton, 27 So.3d 243, 245 (Fla. 2d DCA 2010), the court ruled that “experts’ observations dating back to 2003” used in an involuntary commitment hearing under section 393.11(8), Florida Statutes (2007) in 2007 and 2008 were not “competent substantial evidence,” citing Reilly.
Other jurisdictions have reached similar conclusions. The Supreme Court of California,[8] for example, in Albertson v. Superior Court, 25 Cal.4th 796, 107 Cal.Rptr.2d 381, 23 P.3d 611 (2001), discussed the need for current information about a detainee’s mental state, relying on statutorily required annual mental examinations for committed persons not unlike those in the Jimmy Ryce Act:
The district attorney has an interest in obtaining information concerning the individual’s current mental state for two reasons: to avoid committing a person who does not currently suffer from a qualifying mental disorder, and to support the commitment of a person who does suffer from a qualifying mental disorder.
The SVPA also sheds light on what the Legislature considers to be “current” for purposes of the Act. Section 6605, subdivision (a), requires that each person actually committed as an SVP undergo a “current examination of his or her mental condition ... at least once every year.” (Italics added.) This suggests the Legislature’s recognition that diagnoses can change in light of treatment, severity of mental disorder, changed circumstances, and the passage of time. As observed in Butler v. Superior Court (2000) 78 Cal.App.4th 1171, 1180, 93 Cal.Rptr.2d 468, evaluations like those of Drs. Korpi and Hupka “performed at the initial commitment stage would not reflect the [petitioner’s] current medical condition” at a subsequent stage, well more than a year later. (Accord, Peters v. Superior Court (2000) 79 Cal.App.4th 845, 850, 94 Cal.Rptr.2d 350 [“the use of potentially stale reports subverts the manifest intent of the SVPA — the state must prove that the party suffers from a currently diagnosed mental disorder which predisposes him to engage in sexually violent criminal behavior”].)
*576 Id. 107 Cal.Rptr.2d 381, 23 P.3d at 615-16. See also People v. Landau, 214 Cal. App.4th 1, 154 Cal.Rptr.3d 1, 27 (2013) (holding a mental evaluation a year old was “presumably stale,” citing Albertson).
Because, as a matter of law, the state did not meet its burden to prove clearly and convincingly that appellant suffered from a mental or personality disorder at the time of trial, we do not need to reach the perhaps more problematic question of the sufficiency of the evidence to establish the third element the state was required to prove — a present likelihood of reoffending on account of a disorder.[9] The trial court erred in finding the five-year-old evaluations and 2008 reports relied upon by the psychologists were legally sufficient to prove clearly and convincingly appellant’s mental status at the time of his 2013 trial. Accordingly, we reverse and remand for a new trial.
Reversed and remanded.
PAD OVAN O and RAY, JJ., concur.

. There were two stipulated continuances, a subsequent arrest, and a period of incompetency (before the court declared him competent to stand trial).

. At the jury trial, appellant's trial counsel made very clear appellant’s position that the psychologists' reports and opinions, all predicated on five-year-old evaluations, were dramatically out of date and inadequate to satisfy the state's burden of proof. The point was first argued during opening statement, then made on cross-examination of both of the state's witnesses (Drs. Kline and Falb) and on direct examination of Mr. Hartzog himself, and again in closing. In closing argument, Crystal J. Marsh, appellant's trial counsel, argued:
He has been confined at this commitment center receiving treatment since 2008, but he was never retested. You are being asked to decide that he needs more treatment based on a report from 2008, two reports from 2008. It is 2013.
... The expert’s reports that they gave you are old, out-dated, invalid.
[[Image here]]
... He served 10 years for a 5 year sentence and he's so debilitated he can’t walk a hundred feet ... I’m asking you to realize none of that was taken into consideration in the 2008 report and both psychologists said it should have been.
Post verdict, appellant filed respondent's motion to set aside the verdict and judgment and motion for a new trial, contending that the verdict failed to comport with the manifest weight of the evidence; and specifically that the state failed to meet its burden to adduce clear and convincing evidence either of a mental abnormality or personality disorder or that he was likely to commit a sexually violent offense if not confined, because the evaluations from 2008 were outdated. On appeal, appellant argued that the trial court erred in denying his motion for new trial, while conceding that the motion to set aside the verdict and judgment and enter judgment in his favor was not well taken in the absence of any antecedent motion for directed verdict.

.The criminal rules of procedure do not apply in cases like the present one. "The Florida Rules of Civil Procedure apply unless otherwise specified in this part.” § 394.9155(1), Fla. Stat. (2012). See Brown v. State, 940 So.2d 609, 610 (Fla. 4th DCA 2006) ("In a civil commitment proceeding filed under the Jimmy Ryce Act, the Florida Rules of Civil Procedure generally apply.”). See also Roosevelt v. State, 42 So.3d 293, 298 (Fla. 3d DCA 2010); Mwray v. State, 27 So.3d 781, 782 (Fla. 3d DCA 2010). To preserve for appeal the contention that the evidence was insufficient, a motion for new trial or another, appropriate post-verdict motion is necessary. See Roosevelt; Murray; Brown; Roeling v. State, 880 So.2d 1234, 1236 (Fla. 1st DCA 2004). But see J.T.A. Factors, Inc. v. Philcon Seivs., Inc., 820 So.2d 367, 371 (Fla. 3d DCA 2002) ("Under Florida law, there are two ways to challenge the sufficiency of the evidence before the trial court: (1) a defendant must move for a directed verdict at the close of the plaintiff’s case and at the close of all the evidence; or (2) a defendant must file a motion for a new trial in which he challenges the sufficiency of the evidence to support the jury's verdict.”) (citations omitted). Under Brown and similar cases, a pre-verdict motion for directed verdict does not itself preserve *573 the point; after the verdict is returned, the movant must file another motion, e.g., a motion to set aside the verdict and enter judgment in accordance with the motion for directed verdict.
In the present case, Mr. Hartzog, who did not file a motion for directed verdict at any time, is travelling under his motion for new trial. He now seeks reversal and remand for a new trial, having abandoned any claim of entitlement to reversal outright with remand for entry of judgment in his favor. Although it is true that he has certain rights to periodic judicial review, the right to trial by jury ends upon initial commitment. See § 394.918(3) and (4), Fla. Stat. (2013). A new trial may thus afford meaningful relief in cases like his.

. As defined, sexually violent predators need not actually behave violently or even touch another person. A sexually violent offense includes a "lewd, lascivious, or indecent assault or act upon or in the presence of the *574 child,” § 394.912(9)(b)2„ Fla. Stat. (2012), "including such charges as sexual performance of a child.” Section 394.912(10) provides:
"Sexually violent predator” means any person who:
(a) Has been convicted of a sexually violent offense; and
(b) Suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment.
In the present case, appellant’s qualifying or "index” offense was “promoting sexual performance by a child” by photographing children in partial stages of undress in sexually suggestive poses in violation of section 827.071, Florida Statutes (2005).

. Section 394.918(2), Florida Statutes (2013) provides:
The department shall provide the person with annual written notice of the person's right to petition the court for release over the objection of the director of the facility where the person is housed. The notice must contain a waiver of rights. The director of the facility shall forward the notice and waiver form to the court.

. Appellant testified that he now has an artificial aorta, continues to suffer from diabetes mellitus, and cannot walk more than 100 yards without stopping.

. The "Static-99R” takes into account “historical factors” such as the number of prior offenses, and "dynamic factors,” notably the person’s age, conduct while in treatment, and "level of denial.” Advancing age serves to lower the score.

. California’s sexually violent predator act requires proof beyond a reasonable doubt whereas Florida only requires proof by clear and convincing evidence. But the California court’s rationale does not hinge on the heavier burden.

. Appellant's low risk status, based on the "Static-99R," his advanced age, and his health problems are, of course, all factors which should be taken into account in an updated assessment of appellant’s likelihood to reoffend, assuming he still suffers from mental or personality disorder.