DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JAMES T. STENGEL,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-1598

[May 2, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Glenn D. Kelley, Judge; L.T. Case No. 50-2016-CF-007027-AXXX-MB.

Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Matthew Steven Ocksrider, Assistant Attorney General, West Palm Beach, for appellee.

LEVINE, J.

The state sought to involuntarily commit appellant as a sexually violent predator under the Jimmy Ryce Act. The state's expert examined appellant in July 2015. The trial commenced in February 2017. The jury found appellant to be a sexually violent predator. Appellant argues that the trial court should have granted a directed verdict since the state's expert evaluation was nineteen months old at the time of trial and therefore too "stale" to be considered by the jury as the basis for commitment. We decline to adopt appellant's suggested "bright-line" rule and find there was competent, substantial evidence upon which the jury could find appellant to be a sexually violent predator. As such, we affirm.

A week before trial, appellant sought a court order limiting each side to one expert witness. Appellant argued:

It is important to know that the defense does not plan on disputing the diagnoses that the State's doctors gave [appellant]. The crux of the defense in this case is that

[appellant] does not meet criteria because [he] is not likely to reoffend (not that he doesn't have a mental abnormality). Additionally, the defense has no intention to dispute the state's experts on the STATIC score they assigned to [appellant].

At trial, each side presented testimony from one psychologist. Dr. Sheila Rapa testified for the state. She examined appellant in July 2015 and recounted appellant's history of sexually violent offenses.

In 1991, appellant followed a restaurant employee home, asked her if somebody was next door, and then asked to come in to use her telephone. After the woman let appellant in, he grabbed her and carried her upstairs where he forced her to perform oral sex and then vaginally raped her. Afterwards, he forced her to wash in the shower.

Two days later, he grabbed a woman as she was leaving the spa and pulled her down to the embankment of a canal. He held a knife to her throat and told her to be quiet. He digitally penetrated her while he masturbated. He ejaculated on her and wiped it off with a towel. He then forced her to perform oral sex on him.

In 1992, appellant approached a woman walking to her apartment and asked her where somebody lived. When she said she did not know, he asked for a piece of paper to write on. When the woman tried to close her apartment door to get him a piece of paper, he pushed his way in, pulled her shirt over her head, and put his mouth on her breasts. He forced her to the bedroom and digitally penetrated her. He ran out of the apartment when he thought he heard somebody come in. He then broke a window and came back in while she was on the phone trying to call 911, but left after the woman promised not to call anybody.

Right after that crime, appellant knocked on another door and asked a woman if somebody lived there. She thought it was suspicious, so she wrote down his license plate number. Based on this information, the police apprehended appellant. DNA evidence connected him to the two 1991 cases. Appellant pled no contest and was sentenced to prison. He was placed on sex offender probation following his release from prison in 2003.

While on probation in 2007, appellant removed a window screen and peeped into a woman's house while masturbating. He fled after a young girl saw him. The police apprehended appellant and he was sentenced to eleven years in prison.

According to Dr. Rapa, appellant has a long history of sexualized behaviors and sexual preoccupation. Since the 1980s, appellant has "cruised" around looking for people to masturbate to, engaged in voyeurism, and fantasized about rape. Although appellant had undergone outpatient sex offender treatment after the 2007 offense and had all the skills necessary to not reoffend, he had not changed his behavior.

Dr. Rapa administered the Static 99-R which consists of ten questions to evaluate appellant's likelihood to sexually reoffend. Factors that made appellant more likely to offend included his previous conviction for kidnapping, prior sex offenses, prior sentencing dates (i.e., number of previous times before the court), non-contact sex offenses (voyeurism), unrelated victims, and stranger victims. Appellant's age of fifty-five made him less likely to offend. Dr. Rapa gave appellant a score of seven, which was well above average and high risk. Based on the Static 99-R, appellant's chance of recidivism was 27.5% in five years and a 43% in ten years.

Dr. Rapa diagnosed appellant with "other specified paraphilic disorder, non-consent, in a controlled environment" as well as voyeuristic disorder and anti-social personality disorder. She opined there would be a higher risk of recidivism with this combination of diagnoses. Further, appellant had intimacy deficits which could play a role in appellant reoffending. Dr. Rapa concluded that based on her evaluation of appellant, he needed to be in a secure facility since his sexual deviant drive was very strong and he was likely to reoffend if he was not in a secure facility.

Appellant's expert, Dr. Robin Wilson, diagnosed appellant with "other specified paraphilic order, and the specifier for that courtship disorder with features of voyeurism, exhibitionism, fotteurism and coercive sexuality." Dr. Wilson did not diagnose appellant with a personality disorder. The record on appeal does not reflect when Dr. Wilson examined appellant.

Dr. Wilson also evaluated appellant using the Static 99-R and gave him a score of seven, which was the same as Dr. Rapa's evaluation. Dr. Wilson concluded that appellant was unlikely to re-engage in sexually violent offenses and that appellant did not pose a danger to the community.

At the close of all the evidence, appellant moved for a directed verdict, arguing that Dr. Rapa's evaluation was "stale" because nineteen months had passed between the time of the evaluation and the date of Dr. Rapa's testimony to the jury. The trial court denied the motion for directed

verdict, finding that Dr. Rapa's testimony had not become so stale as to not support a judgment. The trial court found that appellant's argument went to the weight and credibility that should be given to Dr. Rapa's testimony, not to its admissibility.

The jury found appellant to be a sexually violent predator. Appellant filed a renewed motion for directed verdict on the issue of the staleness of Dr. Rapa's testimony, which the trial court again denied. The trial court entered an order adjudicating appellant to be a sexually violent predator and committing appellant to the custody of the Department of Children and Families. Appellant appeals this order.

We review de novo the denial of appellant's motion for directed verdict. *Meruelo v. Mark Andrew of Palm Beaches, Ltd.*, 12 So. 3d 247, 250 (Fla. 4th DCA 2009). A trial court should grant a motion for directed verdict only when the evidence, viewed in the light most favorable to the non-moving party, shows that a jury could not reasonably differ about the existence of a material fact and the movant is entitled to a judgment as a matter of law. *Id.*

In Jimmy Ryce Act cases, to be civilly committed as a sexually violent predator, the state must prove by clear and convincing evidence that the alleged predator "(a) has been convicted of an enumerated sexually violent offense; and (b) suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment." *State v. White*, 891 So. 2d 502, 506 (Fla. 2004); *see also* § 394.912(10), Fla. Stat. (2015). Thus, when "determining whether a person is a sexually violent predator, disputed expert testimony generally creates a question for the jury such that a directed verdict is improper." *State v. Shaw*, 929 So. 2d 1145, 1148 (Fla. 5th DCA 2006).

Appellant relies on *Hartzog v. State*, 133 So. 3d 570 (Fla. 1st DCA 2014). In *Hartzog*, the defendant was adjudicated a sexually violent predator based upon the testimony of two psychologists who had examined the defendant five years before trial. There, the First District found that the trial court erred in concluding the five-year-old evaluations were "legally sufficient to prove clearly and convincingly appellant's mental status at the time" of the defendant's trial. *Id.* at 576. The court found that relying on five-year-old evaluations did not "comport with the legislative design of the Jimmy Ryce Act." *Id.* at 574. In reaching this conclusion, the court referenced the fact that the statute requires that a person who has already been committed have a mental examination "once every year or more frequently at the court's discretion." *Id.* (quoting § 394.918(1), Fla. Stat.).

4

Further, the court pointed out that once a person has already been committed, he "may be entitled to a non-jury trial on the question of his release as often as once a year." *Id.*

*Hartzog* did not create a bright-line rule stating that all evaluations become stale after one year. Nor do we believe that the statute mandates such a bright-line rule. Nowhere in the plain language of the statute is there any requirement of an evaluation within the year preceding trial. *See* §§ 394.917, 394.918, Fla. Stat. Rather, the statutory language centers on the right, post-trial, to an annual review and evaluation due to the nature of the commitment. *See* § 394.918, Fla. Stat. Further, as a practical matter, creating such a bright-line pre-trial rule would have the potential unintended effect of delaying the trial of the alleged predator until every testifying doctor had evaluated the alleged predator within one year of the trial date.

Although not explicitly referenced by the *Hartzog* court, due process considerations provide a separate basis to reject a five-year-old evaluation. To the extent *Hartzog* determined that five-year-old evaluations were legally insufficient evidence, we find that due process considerations would render a five-year-old evaluation insufficient. *See Kansas v. Hendricks*, 521 U.S. 346, 356-57 (1997) (recognizing that due process in the context of involuntary commitment requires proper procedures and evidentiary standards); *Tibbs v. Florida*, 457 U.S. 31, 45 (1982) (stating that "the Due Process Clause forbids any conviction based on evidence insufficient to persuade a rational factfinder of guilt beyond a reasonable doubt").

However, in this case, the delay of nineteen months from evaluation to trial does not even come close to the five year delay evidenced in *Hartzog*. Thus, we find no statutory or due process concerns in utilizing an evaluation made only nineteen months before the time of trial.

Finally, it is worth noting that appellant's pre-trial motion to limit the number of expert witnesses did not allege that Dr. Rapa's evaluation was stale, notwithstanding the fact that the motion was filed only a week before trial. Rather, appellant admitted that he was not planning on disputing the diagnoses or Static 99-R score given by the state's doctors and that the crux of the defense was that appellant was not likely to reoffend.

In summary, we find that the trial court did not err in denying appellant's motion for directed verdict. The trial court correctly found that the age of the evaluation—nineteen months—went only to the weight and credibility of Dr. Rapa's testimony, which were questions for the jury to

decide.  Thus, we affirm.

*Affirmed.*

WARNER and GROSS, JJ., concur.

*    *    *

**Not final until disposition of timely filed motion for rehearing.**